No. 79,579

STATE OF KANSAS, *Appellee*, v. GARY D. BISHOP, *Appellant*.

(957 P.2d 369)

Opinion filed April 17, 1998.

*Thomas R. Fields,* of Kansas City, argued the cause and was on the brief for appellant.

*Delia M. York,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Gary A. Bishop, from his convictions for driving under the influence of alcohol (K.S.A. 1997 Supp. 8-1567) and failure to maintain a single lane of traffic (K.S.A. 8-1522).

Bishop is a deaf mute who communicates through American Sign Language. At 11:36 p.m. on August 9, 1996, Trooper Steven Zeller observed Bishop's car weave drastically within its lane of traffic and leave its lane of traffic at least once. Bishop was accompanied by two children.

After stopping Bishop, the trooper realized that Bishop was deaf and could not verbally communicate with him. The trooper detected a strong odor of alcohol emanating from Bishop. Bishop's eyes were bloodshot. The trooper indicated that he wanted Bishop to get out of his car and walk to the rear of his vehicle. Bishop understood this request and followed it. As Bishop walked to the rear of his vehicle, he stumbled.

Because of the communication barrier, the trooper did not ask Bishop to perform any field sobriety tests. Instead, the trooper arrested Bishop for driving under the influence of alcohol and failure to maintain a single lane. At no time did the trooper ever attempt to obtain a sign language interpreter at the scene for Bishop. At some point, Bishop's car was searched and a nearly empty open quart bottle of beer was found in the car.

At the county jail, the trooper provided Bishop with a written copy of the implied consent advisory. Despite knowledge that Bishop was deaf, the trooper also read the implied consent advisory out loud to Bishop. At 12:36 a.m. on August 10, 1996, Bishop submitted to a breath test on the Intoxilyzer 5000. The result of the breath test was a reading of .149.

Bishop was charged with driving under the influence of alcohol and improper driving on a laned road. Bishop requested and was granted a jury trial. The jury returned a verdict of guilty. Bishop was sentenced on July 23, 1997, to 12 months in the county jail and probation for 12 months. County jail time imposed as a condition of Bishop's probation was 10 days. Bishop posted an appeal

bond and timely filed a notice of appeal with the Court of Appeals on July 23, 1997. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

## I. EVIDENCE REGARDING ARREST

Prior to trial, the defense counsel filed a motion to suppress the evidence regarding the arrest, which was denied. At the beginning of the trial, the defense counsel renewed the motion to suppress the evidence regarding the arrest, but it was again denied. At trial, the State introduced evidence regarding the arrest, and the defense counsel specifically objected to this evidence, claiming that the State had not established probable cause to arrest Bishop. At this point, the trial court informed the defense counsel that if he challenged probable cause for the arrest, then the preliminary breath test, which the arresting officer conducted on Bishop, would become admissible and the State would be allowed to introduce it into evidence. The trial court asked the defense counsel if that is what he wanted to do. After thinking it over, the defense counsel stated, "I'll go ahead and withdraw my objection." On appeal, the defense counsel claims that the trial court erred by admitting into trial the evidence regarding Bishop's arrest because there was no probable cause to warrant the arrest.

When either a motion in limine or a motion to suppress is denied, the moving party must object to the evidence at trial to preserve the issue on appeal. *State v. Milo*, 249 Kan. 15, 18, 815 P.2d 519 (1991). In this issue, the defense counsel appeals the trial court's denial of its motion to suppress the evidence regarding Bishop's arrest, claiming that there was no probable cause for such arrest. When the evidence regarding Bishop's arrest was presented at trial, the defense counsel specifically objected to the evidence, claiming that there was no probable cause for the arrest, in order to preserve the issue for appeal. However, the defense counsel immediately withdrew this objection.

The defense counsel withdrew this objection for strategic reasons, and he cannot now complain of the resulting consequences. Since the defense counsel did not specifically object to the evidence admitted at trial regarding Bishop's arrest, he cannot now

challenge the trial court's denial of the motion to suppress the evidence regarding Bishop's arrest. As such, the defense counsel's argument—that the trial court improperly admitted into trial the evidence regarding Bishop's arrest because there was no probable cause for the arrest—fails.

## II. BREATH TEST

The defense counsel claims that the evidence regarding the breath test was improperly admitted into trial because oral notice of the implied consent advisory had not been properly provided to Bishop, as required by K.S.A. 1997 Supp. 8-1001; because an interpreter had not been properly provided to Bishop, as required by K.S.A. 75-4351; and because there had not been a proper evidentiary foundation laid for the test. The defense counsel objected to the evidence regarding the breath test at trial, based on each of these grounds. All of these objections were overruled by the trial court. On appeal, Bishop adds a fourth challenge to the admission of evidence at trial regarding the breath test—Bishop claims that the proper protocol required in administering the breath test was not followed by the officers who conducted the test.

### A. K.S.A. 1997 Supp. 8-1001

K.S.A. 1997 Supp. 8-1001 provides that before a breath test is administered, the person being requested to submit to the test must be given oral *and* written notice of the statutory language set forth in 8-1001(f)(1). Subsection (3) also provides: "It shall not be a defense that the person did not understand the written or oral notice required by this section."

Under this statute, before a breath test is administered, oral and written notice *shall* be given to the accused. K.S.A. 1997 Supp. 8-1001(f); see *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, Syl. ¶ 1, 840 P.2d 448 (1992); *State v. Luft*, 248 Kan. 911, 912-13, 811 P.2d 873 (1991) (statutory provisions, which require notice of certain rights be given to a person before a breath test is administered, are mandatory, not merely directory; failure to provide such notice requires suppression of the test results). The defense counsel concedes that the trooper tried to comply with 8-1001 in

administering the breath test by giving Bishop a written copy of the notice required and by reading the notice to Bishop out loud before the test was conducted. Even though the trooper knew that Bishop could not hear the oral notice required by 8-1001, the trooper subjectively believed that Bishop understood his rights before he consented to the breath test. The defense counsel claims that the trooper could not and did not provide Bishop with oral notice of his rights, since he was deaf, and that this violated the mandatory notice requirements in 8-1001.

In *Kim v. Kansas Dept. of Revenue*, 22 Kan. App. 2d 319, 916 P.2d 47, *rev. denied* 260 Kan. 994 (1996), the defendant's driver's license was suspended for 1 year by the Kansas Department of Revenue (KDR), pursuant to 8-1001, for his refusal to submit to a blood alcohol test. The defendant was a Korean immigrant, and he claimed to have a problem understanding English, including the oral notice which was provided before the test was conducted. The defendant asked the trial court to review the KDR's decision, but the trial court granted summary judgment in favor of the KDR. The defendant appealed to the Court of Appeals.

On appeal, the defendant argued that he did not understand the officer who read him the implied consent advisory, which informed the defendant that the refusal to take an alcohol test could result in suspension of his driver's license for at least 1 year. See K.S.A. 1997 Supp. 8-1001(f)(1)(F). According to the defendant, his lack of understanding in regards to the oral notice and the officer's failure to give such notice in Korean amounted to a failure to provide him with the oral notice required by 8-1001. The Court of Appeals rejected the defendant's argument and upheld the KDR's license suspension. 22 Kan. App. 2d at 322. In so holding, the Court of Appeals stated:

"Our research has found no Kansas cases addressing a plaintiff's failure to understand the required notices because of a language barrier. Nevertheless, KDR cites to several cases from other jurisdictions which are persuasive. See *State v. Webb*, 212 Ga. App. 872, 443 S.E.2d 630 (1994) (hearing- and speech—impaired defendant); *State v. Tosar*, 180 Ga. App. 885, 350 S.E.2d 811 (1986) (Spanish-speaking defendant); *Warner v. Commissioner of Public Safety*, 498 N.W.2d 285 (Minn. App. 1993) (deaf plaintiff); *Yokoyama v. Commissioner of Public Safety*, 356 N.W.2d 830 (Minn. App. 1984) (Japanese-speaking plaintiff); *Com. v.*

*Mordan*, 419 Pa. Super. 214, 615 A.2d 102 (1992), *aff'd* 534 Pa. 390, 633 A.2d 588 (1993) (deaf-mute defendant). In those cases, each court held that the failure to understand the warnings is not a defense and does not render the results of any tests inadmissible. Conversely, *Kim* cites to no authority which has held that a defendant must understand the warnings given.

"Furthermore, K.S.A. 1995 Supp. 8-1001(f)(3) states that '[i]t shall not be a defense that the person did not understand the written or oral notice required by this section.' See *Buchanan v. Kansas Dept. of Revenue*, 14 Kan. App. 2d 169, 171, 788 P.2d 285 (1989)." 22 Kan. App. 2d at 322-23.

Based on the *Kim* case, we hold that the officer properly provided Bishop with the oral and written notice required by 8-1001(f), regardless of whether Bishop understood the notice or not. K.S.A. 1997 Supp. 8-1001(f)(3). This issue fails.

## B. K.S.A. 75-4351

K.S.A. 75-4351 provides, in pertinent part:

"A qualified interpreter *shall* be appointed . . . for persons . . . who [are] deaf. . . . (e) prior to any attempt to *interrogate* or take a statement from [persons] who [are] arrested for an alleged violation of criminal law of the state or any city ordinance."

At the time Bishop's breath test was administered, he had been arrested for an alleged violation of criminal law of the State. According to Bishop, the breath test amounted to an interrogation. Since a sign language interpreter was not provided for him during such interrogation, Bishop claims that the breath test/interrogation violated K.S.A. 75-4351 and should have been suppressed. In arguing that the breath test amounted to an "interrogation," the defense counsel points to the following facts: The trooper stopped Bishop's car, arrested him, and handcuffed him. The trooper transported Bishop to the county jail and elicited information from him through the use of a breath test. Since Bishop was in custody (*i.e.*, he was not free to leave), and information (his blood-alcohol concentration) was being requested from him, the defense counsel asserts that Bishop was being "interrogated" during the breath test. Thus, the defense counsel claims that a qualified sign language interpreter should have been appointed for Bishop prior to the breath test/interrogation, in order to interpret the implied consent advisory for Bishop, pursuant to K.S.A. 75-4351.

In response, the State argues that there is no evidence in this case that Bishop was being interrogated or even that a statement was being requested from him during the administration of the breath test. As such, the State asserts that K.S.A. 75-4351 did not apply to Bishop's breath test situation and did not require an appointment of an interpreter. According to the State, the trooper properly provided written and oral notice of the implied consent advisory to Bishop as required by 8-1001(f). Thus, the State argues that the breath test and its result were properly admitted into evidence at trial.

This issue revolves around the definition of interrogation. The Court of Appeals addressed the definition of an interrogation and whether a breath test fell into such definition in *State v. Leroy*, 15 Kan. App. 2d 68, 803 P.2d 577 (1990).

In the *Leroy* case, the defendant was arrested for DUI and requested an attorney. The law enforcement officer then asked the defendant to take a breath test. The defendant requested his attorney again, and the officer told him that he had no right to an attorney prior to taking the test. The defendant refused the breath test. At trial, the court suppressed the evidence regarding the defendant's refusal to submit to a breath test because he had not been provided an attorney as he had requested.

Upon the State's appeal, the Court of Appeals stated:

"Communicative testimony is protected by the privileges provided in the Fifth Amendment; real or physical evidence is not protected. *Schmerber v. California*, 384 U.S. 757, 764, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966). In distinguishing between communicative testimony and real or physical evidence, the court in *Schmerber* held that the taking of blood samples for the purpose of determining intoxication was not communicative testimony. 384 U.S. at 765.

. . . .

". . . Only questions that require suspects to communicate any personal beliefs or knowledge of facts meet the definition of communicative testimony that qualifies as custodial interrogation. *Muniz*, 496 U.S. [582, 110 L. Ed. 2d 528, 110 S. Ct. 2638 (1996)].

. . . .

"Based on *Miranda* and its progeny, it is clear that [the officer's] request that defendant submit to a breath test did not qualify as custodial interrogation. Because the taking of physical evidence to determine intoxication does not classify as custodial interrogation, defendant's Fifth Amendment privileges were not in-

voked and he had no right to an attorney. Thus, his refusal to submit to the requested test was properly admitted." 15 Kan. App. 2d at 71-72.

Based on the *Leroy* case, the request for a defendant to take a breath test or an actual breath test does not amount to an interrogation.

Further, in *Com. v. Mordan*, 419 Pa. Super. 214, 615 A.2d 102 (1992), *aff'd* 534 Pa. 390 (1993), the Pennsylvania Superior Court held that a deaf mute motorist is not entitled to a sign language interpreter prior to submission to a breathalyzer test so that the defendant can make an informed choice as to whether to take the test and that the breathalyzer results should not be suppressed because the services of an interpreter were not provided before the motorist submitted to the test.

Mordan, after his arrest, was informed both orally and in writing of the information he was statutorily entitled to be informed of. The trial court specifically found Mordan could not read lips and could not read well enough to understand that he had a right to refuse the test.

Pennsylvania has a statute similar to our interpreter statute. Pennsylvania held that participation in a breathalyzer test is not the equivalent of an interrogation, nor is it a criminal proceeding. The Pennsylvania court stated:

"The driver's license suspension proceeding by the Department of Transportation for a refusal to take a breathalyzer test is an independent civil proceeding separate and distinct from any criminal charges brought against a motorist. [Citation omitted.] Although the results of the breathalyzer test may be used in a criminal proceeding against appellant, the breathalyzer, itself, is not a criminal proceeding. Since a breathalyzer test is not considered an interrogation or a criminal proceeding within the meaning of 42 Pa.C.S.A. § 8701, we cannot hold that deaf persons have a constitutionally protected liberty interest to an interpreter before exercising a refusal to submit to a breathalyzer test." 419 Pa. Super. at 222.

For a similar result, see *State v. Weishar*, 78 Or. App. 468, 717 P.2d 231, *rev. denied* 301 Or. 338 (1986), and *Warner v. Commissioner of Public Safety*, 498 N.W.2d 285 (Minn. App. 1993).

We hold that K.S.A. 75-4351 does not require the appointment of a qualified interpreter to inform a deaf driver, believed to have driven a motor vehicle while intoxicated, of the consequences of a

refusal to take a breathalyzer test as set forth in 8-1001 because the driver's participation in a breathalyzer test is not equivalent to an "interrogation" or criminal proceeding within the meaning of K.S.A. 75-4351.

## C. Evidentiary Foundation

"The admission or exclusion of evidence, subject to exclusionary rules, is within the trial court's discretion. *State v. Coleman*, 253 Kan. 335, 344, 856 P.2d 121 (1993). Discretion is abused only when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the trial court's view. *State v. Baker*, 255 Kan. 680, Syl. ¶ 9, 877 P.2d 946 (1994)." *State v. Haddock*, 257 Kan. 964, 978, 897 P.2d 152 (1995).

To create an evidentiary foundation for a breath test, the State must introduce evidence into trial that the testing equipment was certified by the Kansas Department of Health and Environment (KDHE), that the testing procedures were used in accordance with the manufacturer's operational manual and the requirements set out by the KDHE, and that the person who operated the testing equipment was certified by the KDHE to operate such equipment. K.S.A. 1997 Supp. 8-1002(a)(3)(A)-(C); see *State v. Lieurance*, 14 Kan. App. 2d 87, 91, 782 P.2d 1246 (1989), *rev. denied* 246 Kan. 769 (1990). ("[T]o introduce the results of a breath test, the prosecution must lay a foundation showing that the testing machine was operated according to the manufacturer's operational manual and any regulations set forth by the Department of Health and Environment."); *State v. Rohr*, 19 Kan. App. 2d 869, 870, 878 P.2d 221 (1994) (" '[T]he legislature has expressly found that, for breath test results to be reliable, the testing equipment, the testing procedures, and the operator of the equipment must all be certified.' "); K.A.R. 28-32-1.

In this case, the State introduced actual documents, indicating certification of the test equipment and the test procedures, into evidence at trial. For instance, the State discussed and introduced into evidence Exhibit 5, an original document indicating that the KDHE had certified the specific breath test machine used for Bishop's test. The State should have made it more clear on the

record what this document was and that it was an original document. However, the fact that it was an original equipment certification document can be determined from the record and, thus, it was properly admitted into evidence to lay a foundation for the breath test. If in fact Exhibit 5 was not an original document certifying the Intoxilyzer 5000 machine used in Bishop's breath test, this does not create reversible error. It is the defendant's responsibility to show error based on the record on appeal. The record does not include Exhibit 5, and the defendant did not ask that the exhibit be added to the record.

Further, in an attempt to prove that the testing procedures were certified by the KDHE, the State also discussed and introduced into evidence Exhibits 2, 3, and 4. Exhibit 4 was a copy of the certified monthly standard report for the breath test machine used for Bishop's test. The original of this document was sent to the KDHE. Exhibit 3 was a copy of a record indicating that the solution used in calibrating Bishop's breath test machine was certified. Exhibit 2 was the original operator's weekly log record, indicating how many tests had been run on the machine so the operator would know when the calibration solution needed to be changed (after 14 tests).

Finally, the trooper who administered the breath test to Bishop testified that he was certified to perform the test at the time it was conducted. The trooper was testifying as to his own personal knowledge that he was certified by KDHE to perform the breath test on Bishop. This testimony amounted to substantial competent evidence which the trial court could use to conclude that the trooper was certified to conduct the test. Thus, this evidence, as a whole, created a proper evidentiary foundation for the breath test so that the breath test results were properly entered into evidence.

However, Bishop points out that some of the documents entered into evidence to prove that the test equipment and testing procedures were certified were not *original* certification documents. Since the documents were not originals, Bishop contends that the required certification was not proven and that a foundation for the breath test and its result was not properly laid. Bishop is incorrect.

"Without question, the better practice is for the State to produce the original documents of certification for admission into evidence." 19 Kan. App. 2d at 871. However, 8-1002(b) specifically allows copies of the certification documents to be entered into evidence to prove that the appropriate certification for the test equipment and procedures existed. ("The signed certification or a *copy* or photostatic reproduction thereof shall be admissible in evidence in all proceedings brought pursuant to this act. . . ." K.S.A. 1997 Supp. 8-1002[b].)

It is true that using copies of documents can sometimes violate the hearsay rule and the best evidence rule. However, both of these rules contain exceptions which apply here and allow copies of documents to be entered into evidence. The best evidence rule allows copies of documents to be introduced into evidence if the trial judge finds the writing is an official record. K.S.A. 60-467(a)(2)(E). All of the copies which were introduced into evidence in this trial were copies of official certification documents that had been sent to the KDHE.

Further, the hearsay rule allows copies of documents to be admitted into evidence if the document purports to be a copy of an official record and it has been authenticated to prove the content of the record. K.S.A. 60-460(o). All of the copies of documents that were entered into evidence at trial were copies of official records—official certification records sent to the KDHE. A copy of an official record is authenticated if evidence has been introduced sufficient to warrant a finding that the copy is a correct duplicate of an official record. K.S.A. 60-465(2). The copied documents at issue were discussed and explained by the current custodian of the documents and the person who was the custodian of the documents at the time that Bishop's test was administered. These witnesses testified that these copies of the original certification records were true and accurate duplicates of the original records.

Thus, based on these exceptions to the best evidence rule and the hearsay rule, the copies of the certification documents were properly entered into evidence. See *Lieurance*, 14 Kan. App. 2d at 91 (citing K.S.A. 1988 Supp. 60-467[a][5]); 60-465. Relying on the original documents (the original log book of calibrations and the

test machine's original certification document), the copied documents (a copy of the certified monthly standard report for the breath test machine and a copy of the document certifying the calibration solution), and the trooper's testimony that he was certified to conduct breath tests at the time he administered Bishop's breath test, the State laid an adequate foundation for admitting the breath test evidence into trial. The trial court did not abuse its discretion in admitting the evidence regarding the breath test into trial.

Finally, Bishop objects to the results of the breath test (.149) being admitted into evidence at trial because no witness laid an evidentiary foundation for test results by testifying as to what the .149 test results meant. This issue fails for two reasons. First, when the State introduced the results of the breath test, the defense counsel did not specifically object to this evidence on the basis that no witness had testified regarding what .149 meant. Instead, the defense counsel merely objected to the breath test and its result being introduced into evidence because a proper foundation had not been laid for the breath test. "An issue not presented to the trial court will not be considered for the first time on appeal." *State v. Alderson*, 260 Kan. 445, Syl. ¶ 7, 922 P.2d 435 (1996); see also *State v. Boyd*, 257 Kan. 82, 89, 891 P.2d 358 (1995) (timely objection necessary to give trial court an opportunity to correct alleged errors). Since the defense counsel did not make this objection at trial regarding the State's failure to explain the .149 breath test result, he cannot now raise this issue on appeal. See *Lieurance*, 14 Kan. App. 2d at 93. ("*Lieurance* argues that the Intoxilyzer results, '.234' were not explained to mean grams of alcohol per 210 liters of breath. Lieurance did not raise this at trial, so it cannot be raised on appeal.")

Second, even if the defense had properly objected to this issue at trial and properly raised it on appeal, this issue would fail. The trooper who conducted Bishop's breath test was asked to explain the procedure he followed in conducting a breath best. The trooper testified as follows:

"[I]n this instance I believe I showed him how to blow into the tube, and the machine will do the rest. It will give a sample which they have to blow long and

hard enough for the Intoxilyzer to *obtain a sample of the deep lung air, and it will stop and tell what the blood alcohol content is.* It does it through a display."

"Q [By prosecutor]: And does that come out as a printout piece of paper?

"A: Yes, it does.

"Q: And do you have that printout here today?

"Yes, I do.

. . . .

"Q: Now, I would ask you to go ahead and identify what I have marked there as State's Exhibit Number One.

"A: This is a printout form, evidence printout form, and it shows the observation time, the subject's name, the Intoxilyzer serial number, shows the air blank, the standard—extended standard, and shows the subject's test and another air blank.

. . . .

"Q: Trooper Zeller, then, what were the results of that test?

. . . .

"A: The subject's test result was .149."

Based on the trooper's testimony, the jury was aware that the .149 result from Bishop's breath test was his blood alcohol concentration. Further, Jury Instruction No. 12 explained to the jury the elements necessary to convict Bishop of driving under the influence. This instruction stated:

"The defendant is charged with the crime of operating or attempting to operate a vehicle while under the influence of alcohol. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the defendant drove or attempted to drive a vehicle;

2. That the defendant, while driving or attempting to drive, was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle; and

3. That this act occurred on or about the 9th day of August, 1996, in Wyandotte County, Kansas.

"The defendant is charged in the alternative with operating a vehicle while *having a blood alcohol concentration of .08 or more* or operating a vehicle while under the influence of alcohol. You are instructed that the alternative charges constitute one crime.

"You should consider if the defendant is guilty of operating a vehicle while having a *blood alcohol concentration of .08 or more* and sign the verdict upon which you agree." (Emphasis added.)

Based on this jury instruction, the jury was aware that if Bishop had a blood alcohol concentration of .08 or more, then he was guilty of DUI. Relying on the trooper's testimony and jury instruction

No. 12, the jury had enough information to figure out what Bishop's breath test result meant. The jury did not need a full medical explanation of how blood alcohol concentration is determined or a full technical explanation of exactly how the machine determines this content. This issue fails.

### D. Protocol

As previously mentioned, prior to the trial, the defense counsel filed a motion in limine asking the trial court to suppress the evidence regarding the breath test and its result because the test was not conducted according to police protocol. The trial court held a hearing on the motion on February 27, 1997, and denied it. At trial, when evidence of the breath test and its results were introduced, the defense counsel objected to the evidence because oral notice of the implied consent advisory was not provided to Bishop, pursuant to 8-1001; because an interpreter was not provided, pursuant to 75-4351; and because there was not a proper evidentiary foundation laid for the test. All of these objections were overruled by the trial court. However, the defense counsel did *not* object to the admission of evidence regarding the breath test and its result on the ground that the proper protocol had not been followed in conducting the test.

On appeal, the defense counsel claims that the trial court erred in denying the motion in limine. According to the defense counsel, evidence of the breath test and its result should have been excluded from trial because proper protocol in conducting the test was not followed. The defense counsel asserts that the trooper did not observe Bishop for 20 minutes or check into Bishop's mouth for foreign substances before the breath test was conducted so as to ensure its validity. Due to this failure to follow protocol, Bishop claims that an adequate evidentiary foundation was not laid for the breath test and its result. Thus, Bishop asserts that the evidence regarding the breath test result was improperly admitted into evidence.

"If a motion in limine is denied, the moving party must object to the evidence at trial to preserve the issue on appeal." *State v. Johnson*, 255 Kan. 252, Syl. ¶ 1, 874 P.2d 623 (1994). At trial in this case, the defense counsel did not object to the evidence re-

garding the breath test and its result on the ground raised in the motion in limine—that the trooper who conducted Bishop's breath test failed to follow the proper test protocol. Thus, this issue was not preserved for appeal. This issue fails.

### III. JURY INSTRUCTIONS

In its instructions to the jury, the trial court did not include any instructions regarding the requirement of an interpreter at the time the breath test was conducted. On appeal, the defense counsel claims that the trial court erred by not including 8-1001 and 75-4351, relating to the requirement of an interpreter and the admission of the breath test results, as part of the instructions. According to the defense counsel, the inclusion of these statutes would have aided the jury in viewing the facts in light of the applicable law. To not belabor the point, the defense counsel simply points to his prior arguments regarding these statutes in support of this issue.

As a matter of law, neither 8-1001 nor 75-4351 required the appointment of an interpreter during Bishop's breath test or prevented the admission of the breath test and its result into evidence at Bishop's trial. Thus, instructions on these statutes were not necessary. This issue fails.

### IV. SUFFICIENCY OF THE EVIDENCE

Bishop was convicted of one count of driving under the influence of alcohol and one count of failure to maintain a single lane. The defense counsel argues that the evidence was insufficient to sustain these convictions. Claiming that the breath test and its result should not have been admitted into evidence, the defense counsel asserts that the other evidence which was properly admitted was not sufficient to support these convictions. According to the defense counsel, the State failed to prove beyond a reasonable doubt that Bishop failed to maintain a single lane or was driving under the influence of alcohol.

This issue fails. When the sufficiency of the evidence is challenged, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could

have found the defendant guilty beyond a reasonable doubt. *State v. Cellier*, 263 Kan. 54, Syl. ¶ 7, 948 P.2d 616 (1997). Based on this standard of review, the evidence presented in this case is sufficient for a reasonable factfinder to have found Bishop guilty, beyond a reasonable doubt, of failure to maintain a single lane and driving under the influence of alcohol.

## V. SUMMARY

Bishop's arguments fail for an additional reason. The party urging error has a duty to furnish a record demonstrating error. Here, Bishop has failed to include the videotape showing the events leading up to the consent to the breath test, to include the consent form itself, and to include a transcript of the motion to suppress. The trial judge obviously found Bishop was informed of his rights in regard to the breath test. Bishop chose not to include that part of the record that is vital to that determination. There was some communication between Bishop and Trooper Zeller, as Bishop did submit to the breath test and obeyed the orders he was given. In fact, the trooper testified that he thought Bishop understood his rights in regard to the breath test. Apparently, the trial judge was also under the impression that Bishop understood his rights.

We are unwilling to say that the fact Bishop is a deaf mute, standing alone, is sufficient to show Bishop was not properly informed. The issue before us must be decided on a case-by-case basis. The videotape would show the communication between Trooper Zeller and Bishop. The trial court observed that tape, plus the consent form (which apparently contained written communication between Bishop and the trooper) and heard the motion to suppress, which we do not have a transcript of. Based on the record before us, we are unwilling to say the trial judge erred. Bishop has not demonstrated reversible error.

Affirmed.