NOT DESIGNATED FOR PUBLICATION

No. 117,712

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAWAN DILIP PATIDAR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; KEITH L. COLLETT, judge. Opinion filed July 27, 2018.
Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*Daryl E. Hawkins*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and MALONE, JJ.

PER CURIAM: Because the facts in this record support a finding that a deputy
sheriff had a reasonable suspicion that Sawan Dilip Patidar was driving under the
influence of alcohol, we uphold the district court's denial of his motion to suppress.

*A deputy stopped Patidar after following him on the Interstate.*

Around 10 p.m. one evening in November 2015, a Dickinson County Sheriff's
Deputy stopped a minivan after he saw it cross the center line twice. When the officer
walked up to the driver's side of the minivan he told Patidar that he was driving all over

1

the road. Patidar reeked of alcohol and the officer asked him to step out of the car so he could be sure if the odor was coming from the minivan or from Patidar. Patidar got out and followed the officer to the rear of the vehicle.

The deputy asked Patidar how much he had to drink, and Patidar said that he had nothing to drink. The deputy later testified that as he spoke with Patidar behind the minivan, he could smell alcohol coming from his face. Based on Patidar's driving and the smell of alcohol, he asked Patidar to perform some field sobriety tests. The deputy's dash cam video shows that Patidar first declined but later agreed to the testing.

*The field sobriety test results are noteworthy.*

The officer asked Patidar whether he had any medical history that would prevent him from completing the tests. The video shows Patidar first stating that he has an elbow injury and then stating that he has a hip injury. Despite these injuries, Patidar told the officer that he could perform the tests.

In the deputy's opinion, Patidar failed two standardized field sobriety tests: the walk-and-turn test and the one-legged-stand test. After explaining and demonstrating each test, the officer interpreted Patidar's inability to understand the directions as proof that he was intoxicated. The walk-and-turn test required Patidar to remain in the starting position, take nine short steps, turn around, and walk nine heel-to-toe steps on a line. He failed the test because he came out of the starting position early, missed two heel-to-toe steps, and he made an improper turn. Then, the one-legged-stand test required Patidar to stand with his feet together and arms straight down, and then lift one foot 6 inches off the ground and count up from 1001 until told to stop. The officer instructed Patidar that if he dropped his foot, he needed to restart the counting where he stopped. Patidar failed the test because he swayed side-to-side, improperly raised his arms for balance, put his foot down early, and started to hop around during the test.

2

Later, the deputy testified that the weather conditions that night were clear and not windy. In contrast, Patidar testified that heavy winds made it hard for him to stand and also to control his car. Patidar testified that he told the deputy that he was having tire pressure problems in one of his tires. The deputy did not recall talking to Patidar about his tires or whether he was having mechanical issues with his car.

Following the field sobriety tests, the deputy asked Patidar to take a preliminary breath test and he refused. At this point, the deputy asked Patidar for his driving license. The deputy arrested Patidar for driving under the influence of alcohol based on the two failed sobriety tests, his impaired driving, and the odor of alcohol coming from Patidar's person.

The State charged Patidar with one count of driving under the influence of alcohol—his second offense—and two traffic infractions.

Patidar moved to suppress the evidence and argued the deputy conducting the stop lacked a reasonable suspicion that he was driving under the influence of alcohol. Patidar argued that his standardized field sobriety test results and his interactions with law enforcement after his arrest required suppression because English is not his primary language and he was not afforded an interpreter under K.S.A. 75-4351. Patidar also argued that his refusal to submit to a preliminary breath test required suppression because he received improper advisories under K.S.A. 2017 Supp. 8-1012.

At the motion hearing, the deputy testified that he never asked Patidar whether he could understand him or if he needed an interpreter during the traffic stop because Patidar responded to him in English and he could understand Patidar's English. Patidar testified, however, that he was born in India and the first language he learned was Gujarati but Patidar admitted that he moved to the United States when he was 13 or 14, and attended school here. Patidar stated he sometimes has trouble understanding English, especially

3

when he is nervous, because he thinks in Gujarati and has to translate to English before he responds in English. Patidar stated he was nervous that night.

Patidar appeals the denial of his motion. He raises two claims. The district court erred in denying his motion to suppress because (1) the deputy lacked the reasonable suspicion that he was driving under the influence of alcohol; and (2) English is not his primary language and the deputy violated K.S.A. 75-4351 by not getting an interpreter during the field sobriety tests.

*The rules we must follow.*

When we review a district court's decision on a motion to suppress, we first assess whether the court's factual findings are supported by substantial competent evidence. Then, with no limitation, we review the court's legal conclusion drawn from those facts. Defendants have the burden of establishing the facts necessary to support their suppression motions in the district court. The State has the burden of proving the lawfulness of a search and seizure. See *State v. Keenan*, 304 Kan. 986, 993, 377 P.3d 439 (2016).

The parties dispute whether the deputy had a good reason to stop Patidar in the first place. To resolve this dispute we must examine the statute and two cases. First, K.S.A. 2017 Supp. 8-1522(a) states that a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. The deputy here saw Patidar cross the center lane twice. We move to the cases to see if this observation can be the basis for a traffic stop.

In *State v. Marx*, 289 Kan. 657, 215 P.3d 601 (2009), our Supreme Court held that a reasonable suspicion requires more than an incidental and minimal lane breach. The

4

*Marx* court held that to support a reasonable suspicion finding that a traffic infraction occurred under K.S.A. 8-1522(a), "a detaining officer must articulate something more than an observation of one instance of momentary lane breach." 289 Kan. at 675. But *Marx* is not the last word on the subject.

In *State v. Miles*, No. 114,544, 2017 WL 383790 (Kan. App. 2017) (unpublished opinion), the officer's testimony showed the degree of the lane violation:

> "[T]he officer witnessed Miles cross the line once and watched him return his car into its original lane. The officer saw both tires on the driver's side of Miles' car pass over the lane line. Also, about half of Miles' car drifted over the line. The car crossed over the line to such a degree that the officer believed that Miles may have failed to signal a lane change. The officer believed that Miles had violated Kansas law by either failing to signal a lane change or failing to stay in his lane for no apparent reason." 2017 WL 383790, at *7.

The *Miles* panel reasoned that although only one lane violation occurred, the district court could consider the extent of the lane breach under *Marx*. Nor did Miles dispute that he crossed the line. The panel ultimately held that the officer had reasonable suspicion to support the traffic stop because

- the extent of the breach supported that it was more than "incidental and minimal"; and
- the State presented evidence that the weather was clear and there were no obstructions in the road that made it impracticable to safely maintain a single lane. 2017 WL 383790, at *8.

In other words, we must look at all the circumstances to determine if the stop here was reasonable. The deputy's testimony shows why this stop was reasonable.

The deputy testified he was travelling behind Patidar's minivan when he saw the minivan cross the center line two separate times. The video of the stop shows the minivan merge almost fully from the right lane into the left, and then return without signaling. The minivan again crosses the center line into the left lane and moves forward with its two right tires in the right lane, and then the deputy activates his lights. The minivan then merges fully into the right lane and its brake lights come on. The deputy follows the minivan for a short time and then turns on his sirens. The minivan then signals right and pulls to the side of the road.

The deputy maintained that he made the traffic stop after noting that there were no objects in the road when the minivan crossed over the center line and the weather was clear. Patidar did not deny or admit that he crossed over the center line, but stated that he had trouble controlling his minivan because of his low tire pressure and the heavy winds that night. The deputy testified that he did not recall if it was windy or that Patidar informed him of any tire pressure or mechanical problems. The traffic stop video shows that after the deputy had Patidar go to the back of the minivan, Patidar pointed at a tire and told the deputy that one of his tires was low.

Based on our review of the undisputed facts, we hold that the deputy had a reasonable suspicion to support the traffic stop based on the extent of the lane breaches.

Additionally, with the strong odor of alcohol coming from Patidar's person, his refusal to take a preliminary breath test, and his lane violations, we conclude that the deputy had a reasonable suspicion that Patidar was driving under the influence of alcohol. Patidar's failure to understand and follow the instructions for the field sobriety tests, as well as his failure to perform successfully two tests, gave the deputy good reason to arrest him for driving under the influence. We find no error in the pretrial rulings of the district court when it denied Patidar's motion to suppress. We turn now to the issue about the appointment of an interpreter.

6

*We see no reason to appoint an interpreter here.*

K.S.A. 75-4351(e) requires the appointment of an interpreter for an individual whose primary language is not English when that individual is subject to an officer's attempt to interrogate, or is subject to an interrogation following an arrest. The district court held Patidar's demonstrated fluency and understanding of English—based on the traffic stop video and his testimony—did not support a finding that English was not his primary language.

We find helpful the Supreme Court's treatment of an officer's request for a breath test in *State v. Bishop*, 264 Kan. 717, 723-25, 957 P.2d 369 (1998). The *Bishop* court held that this request is *not* like an interrogation where admissions are obtained:

> "K.S.A. 75-4351 does not require the appointment of a qualified interpreter to inform a deaf driver, believed to have driven a motor vehicle while intoxicated, of the consequences of a refusal to take a breathalyzer test as set forth in K.S.A. 1997 Supp. 8-1001 because the driver's participation in a breathalyzer test is not equivalent to an interrogation or criminal proceeding within the meaning of K.S.A. 75-4351." 264 Kan. 717, Syl. ¶ 3.

The *Bishop* court explained that an officer's request to take a breath test or the actual breath test itself involves the taking of physical or real evidence. This does not qualify as "communicative testimony," or an interrogation under the Fifth Amendment to the United States Constitution. See 264 Kan. at 723-24. The *Bishop* court relied on a decision from this court—*State v. Leroy*, 15 Kan. App. 2d 68, 71-72, 803 P.2d 557 (1990)—which held, "'[o]nly questions that require suspects to communicate any personal beliefs or knowledge of facts meet the definition of communicative testimony that qualifies as custodial interrogation.'" 264 Kan. at 723.

7

Following this line of reasoning and the demonstrated command of English by Patidar, the failure to appoint an interpreter here is not reversible error.

Affirmed.