No. 124,793

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JEREMY R. FUDGE,
*Appellee*.

SYLLABUS BY THE COURT

1.

The State meets the minimal foundational requirements for admission of a breathalyzer test by showing that the operator and the testing equipment were certified, and the testing procedures met the requirements set out by the Kansas Department of Health and Environment. K.S.A. 2020 Supp. 8-1002(a)(3).

2.

The required testing procedures set out by the KDHE for evidentiary breath alcohol tests are in the written protocol published by the KDHE for the equipment used. KDHE's protocol for the Intoxilyzer 9000 does not require the test operator to check the subject's mouth for foreign matter.

3.

The State may meet the minimal foundational requirements of K.S.A. 2020 Supp. 8-1002(a)(3) for admissibility of a breath test even though a suspect has foreign matter in his or her mouth during the test.

Appeal from Anderson District Court; ERIC W. GODDERZ, judge. Opinion filed September 30, 2022. Reversed and remanded with directions.

*Elizabeth L. Oliver*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Russell L. Powell*, of Monaco, Sanders, Racine, Powell & Reidy, L.C., of Leawood, for appellee.

Before GARDNER, P.J., MALONE and CLINE, JJ.

GARDNER, J.:  Jeremy R. Fudge, after being arrested for driving under the influence of alcohol, took a breathalyzer test which showed his breath alcohol content was above the legal limit. The State then charged Fudge with various crimes. Fudge moved to suppress the breathalyzer test results, arguing they were unreliable because he had a pouch of chewing tobacco in his mouth during the test. The district court agreed and granted the motion to suppress, finding the test results inadmissible because the test operator had violated Kansas Department of Health and Environment (KDHE) procedures by inadequately checking Fudge's mouth before administering the test. The State timely appeals, arguing that KDHE's protocol does not require a breathalyzer operator to check the subject's mouth. Agreeing with the State's position, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 24, 2020, Sheriff's Deputy David Harper-Head arrested Fudge for driving under the influence, in violation of K.S.A. 2020 Supp. 8-1567(a). Harper-Head transported Fudge to the Anderson County Jail where he administered a chemical breath test using an Intoxilyzer 9000. It showed Fudge's blood alcohol content was 0.106—over the legal limit.

The State charged Fudge with possessing a firearm under the influence, driving under the influence, transporting liquor in an open container, and speeding. Fudge then moved to suppress the results of his breath test, arguing he had a pouch of chewing tobacco in his mouth during the test, and that the deputy's failure to ensure his mouth was clear of foreign matter violated KDHE's procedures for operating the breathalyzer.

2

At the hearing on Fudge's motion to suppress, Deputy Kenneth Seabolt testified that before bringing Fudge to the county jail, he instructed Fudge to not bring any "chew, cigarettes, alcohol, guns, grenades, anything needles, anything contraband" into the facility. Seabolt also warned Fudge that his violation of these instructions could result in a felony charge. But Seabolt did not check Fudge's mouth for foreign matter.

In his testimony, Harper-Head explained that his habit is to check a suspect's mouth before administering the test:  "To the best of my recollection I checked [Fudge's] mouth. I can't say with a 100 percent certainty, but I can tell you it's my normal standard practice in my many years of doing this job and my many years of DUI arrests that I check their mouth." Harper-Head also testified that he followed the protocol of the State of Kansas when he administered the test. He closely observed Fudge for the twenty-minute deprivation period and did not observe Fudge drink, belch, or chew anything during that period. Harper-Head turned off his body camera to administer the test to avoid radio frequency interference with the breathalyzer test. Although there is normally video in the Intoxilyzer 9000 room, there was none from Fudge's test.

Fudge testified that he did not recall Seabolt's telling him that he could not bring any tobacco into the jail. Nor did he remember whether Harper-Head checked his mouth. But he testified that he had a pouch of chewing tobacco in his mouth during the breath test. Fudge also admitted a picture he had taken of himself inside the jail which showed a pouch of chewing tobacco in his mouth. The picture's caption, apparently added by Fudge, said:  "Getting booked in had a chew in the whole time before breathalyzer 12-25-2020 breathalyzer on 12-24-2020".

Amanda Pfannenstiel, a Laboratory Improvement Specialist with KDHE, also testified. She repeatedly spoke to whether breathalyzer operators should first check the contents of the subject's mouth, saying:

- "It is our preference that they check their mouth and ensure that there's nothing there, but it is not a requirement of the protocol that they do so."
- "[I]t's a good practice to check the mouth . . . but it's never been an actual requirement of the protocol."
- Agreeing that checking the mouth of the subject is "best practice."

Pfannenstiel provided two reasons why checking the subject's mouth is a recommended practice. First, it is important to keep potential contaminants in a subject's mouth from being blown into the Intoxilyzer 9000. Second, it is important to provide a "fair and impartial" test because foreign matters could introduce alcohol into the mouth that could alter the results of the breath test.

The State admitted the published protocol from the KDHE for the Intoxilyzer 9000. That one-page protocol requires, among other matters, that the test operator observe the subject and deprive the subject of alcohol for 20 minutes, but it does not require the operator to check the subject's mouth for foreign matter.

After hearing the evidence, the district court found that KDHE's protocol requires the test operator to check the subject's mouth. It also found that the purpose of the deprivation period is to ensure that no foreign substance is in the subject's mouth that could interfere with the accuracy of the test; yet it was uncontroverted that Fudge had a pouch of tobacco in his mouth when he took the test so Harper-Head either did not check Fudge's mouth or did not check it sufficiently. The district court found the results were inadmissible and granted Fudge's motion to suppress.

The State has taken an interlocutory appeal.

DID THE DISTRICT COURT ERR IN SUPPRESSING THE RESULTS OF THE BREATH ALCOHOL TEST?

*Standard of Review*

In *State v. Ernesti*, 291 Kan. 54, 64-65, 239 P.3d 40 (2010), the Kansas Supreme Court noted three possible contexts in which to determine the appropriate standard of review in this kind of case.

> "[O]ur focus is on the district court's determination that the State cannot meet the foundation requirements. The question of whether evidentiary foundation requirements have been met is left largely to the discretion of the district court. *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 90, 11 P.3d 1165 (2000). Under an abuse of discretion standard, an appellate court will not disturb a district court's decision unless no reasonable person would have taken the same view. See *Vorhees v. Baltazar*, 283 Kan. 389, 393, 153 P.3d 1227 (2007). Yet, even under the deferential abuse of discretion standard of review, an appellate court has unlimited review of legal conclusions upon which a district court's discretionary decision is based. *Kuhn v. Sandoz Pharmaceuticals Corp.* 270 Kan. 443, 456, 14 P.3d 1170 (2000)." 291 Kan. at 64-65.

Fudge styled his motion not as a motion in limine but as one to suppress. We need not determine here whether the motion should have been one in limine rather than one to suppress. See *State v. Smith*, 46 Kan. App. 2d 939, 942-43, 268 P.3d 1206 (2011) (finding alleged failure of law enforcement officer to follow KDHE protocol "does not constitute the violation of a constitutional right and is not legally sufficient to support a motion to suppress"). Neither party has raised this issue and it matters not to our resolution of this case.

Our review of legal conclusions in a motion to suppress is also unlimited. *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). Similarly, our construction of

5

statutes relating to DUI and the testing of blood alcohol content and the interpretation of administrative regulations promulgated by the KDHE is unlimited. *Ernesti*, 291 Kan. at 64. Because the district court's factual findings are uncontested, including that Fudge had a tobacco pouch in his mouth during the test, his appeal is subject to our unlimited review regardless of which contextual standard we use.

*Analysis*

The State argues that the district court erred in suppressing the test results based on Harper-Head's failure to ensure that Fudge had nothing in his mouth during his breath test. It contends that KDHE's protocol for the Intoxilyzer 9000 does not require the test operator to check the subject's mouth and that its evidence met all foundational requirements for admission of the test results. In response, Fudge argues that Kansas caselaw requires the State to establish that the testing procedures followed the manufacturer's operational manual and that the State has not done so. Fudge also argues that based on *State v. Campas*, No. 110,790, 2014 WL 4082408 (Kan. App. 2014) (unpublished opinion), officers violated the first step in KDHE's protocol because his mouth contained foreign matter during the test.

The certification requirements for admission of a breath test are established in K.S.A. 2020 Supp. 8-1002(a)(2) and (3). No one challenges the district court's findings under (a)(2)—that officers had reasonable ground to believe that Fudge was operating a vehicle under the influence and that they gave Fudge sufficient notice. At issue is solely the second subsection, K.S.A. 2020 Supp. 8-1002(a)(3), which establishes the "minimal foundation requirements" for the admissibility of breath tests. See *Ernesti*, 291 Kan. at 62.

6

This subsection requires the State to show, for admission of test failure results, certification of the testing equipment and the test operator, and compliance with certain testing procedures:

"(A) The testing equipment used was certified by the Kansas department of health and environment; (B) the testing procedures used were in accordance with the requirements set out by the Kansas department of health and environment; and (C) the person who operated the testing equipment was certified by the Kansas department of health and environment to operate such equipment." K.S.A. 2020 Supp. 8-1002(a)(3).

The parties agreed that the testing equipment and the test operator were properly certified, as K.S.A. 2020 Supp. 8-1002(a)(3)(A) and (C) require. Fudge's motion challenged only whether "the testing procedures used were in accordance with the requirements set out by the Kansas department of health and environment," as K.S.A. 2020 Supp. 8-1002(a)(3)(B) demands.

*The Minimal Foundational Requirements Are Those Set Out in KDHE's Protocol*

The "requirements set out by the [KDHE]" for breath testing procedures are found in KDHE's published protocol for the specific testing equipment used. KDHE's protocol for the Intoxilyzer 9000 states in its entirety:

"Effective January 1, 2016

Intoxilyzer 9000

Protocol

"1.   Keep the subject in your immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the breath test.

"2.   Check to determine the power switch of the instrument has been activated and is in 'Ready Mode'.

"3.   Press the green Start Test button and follow the instructions displayed by the instrument.

7

"4.     The instrument will begin the Kansas approved sequence automatically. The sequence is Air Blank, Diagnostic Check, Air Blank, Ext Std Check, Air Blank, Subject Test, Air Blank.

"5.     The acceptable range for the External Standard Check is 0.075 to 0.085.

"6.     When prompted for Subject Test, place an unused mouth piece into the breath tube and request the subject provide a breath sample.

"7.     After the final Air Blank cycle, a test result will be printed."

The plain language of this protocol shows that checking a subject's mouth before administering the test is not among the required testing procedures set out by KDHE. K.S.A. 2020 Supp. 8-1002(a)(3). See *State v. Hosler*, No. 108,111, 2013 WL 2321191, at *3 (Kan. App. 2013) (unpublished opinion) (holding that checking subject's mouth is not requirement for admission of breathalyzer test because it is not listed in KDHE protocols; declining to read language into statute that does not exist).

That conclusion was confirmed by KDHE Laboratory Improvement Specialist Pfannenstiel. She typically drafts the manual for the Breath Alcohol Program for the KHDE. She has received training in the Intoxilyzer 8000 and Intoxilyzer 9000, trains law enforcement officers to use the Intoxilyzer 9000, and has trained thousands of officers how to use the Intoxilyzer. She identified the State's Exhibit 2 (set out above) as the relevant KDHE protocol for the Intoxilyzer 9000 and testified that checking the subject's mouth is not part of the required testing protocol.

True, Pfannenstiel characterized checking the subject's mouth as a "preference," "good practice," "highly recommended," and "the best practice." But even highly recommended or best practices are not requirements. See *State v. Vandenberg*, No. 110,236, 2014 WL 5312922, at *2 (Kan. App. 2014) (unpublished opinion) (holding that good practices that are not part of the "formal testing protocol" cannot violate the required testing procedures). See generally *United States v. Kahn*, 415 U.S. 143, 155 n.15, 94 S. Ct. 977, 39 L. Ed. 2d 225 (1974) (noting that warrants often "pass muster

8

under the Fourth Amendment" even when they do not comply with "best practice"); *United States v. Glenn*, 966 F.3d 659, 661 (7th Cir. 2020) (Easterbrook, J.) ("The Fourth Amendment does not require best practices in criminal investigations."); *Henderson v. Board of Montgomery County Comm'rs*, 57 Kan. App. 2d 818, 834, 461 P.3d 64 (2020) (finding officers' best practices do not dictate acts officers are required to take). Best practices for officers, like best practices for attorneys, are not legal requirements. See, e.g., *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (*Strickland*'s standard for ineffective assistance of counsel does not ask whether attorney's representation deviated from best practices or most common custom); *Hartleib v. Weiser Law Firm, P.C.*, No. 19-02099-CM-JPO, 2019 WL 3943064, at *7 (D. Kan. 2019) (unpublished opinion) ("best practices generally recommend the clear and unambiguous communication of termination of the attorney-client relationship, but these practices are not required").

Our sole concern here is whether "the testing procedures used were in accordance with *the requirements set out* by the Kansas department of health and environment." K.S.A. 2020 Supp. 8-1002(a)(3)(B) (Emphasis added.). We use "requirements" in its ordinary sense as meaning "something required; something obligatory or demanded, as a condition"; or "something needed; necessity; need." Webster's New World College Dictionary 1235 (5th ed. 2014).

Pfannenstiel consistently denied that checking a subject's mouth was a requirement of KDHE's breath test protocol. Rather, she testified that the protocol says nothing "about removing foreign substances or checking the mouth for anything." And she testified that if the breath test were conducted with a tobacco pouch in the subject's mouth, the operator could still comply with the Intoxilyzer 9000 standards and KDHE protocol. The record contains no evidence to the contrary.

9

Thus, per Pfannenstiel's expert testimony and KDHE's published protocol for the equipment used here, checking a subject's mouth before administering the test is not among the required testing procedures set out by KDHE. K.S.A. 2020 Supp. 8-1002(a)(3)(B).

*Evidentiary Foundation Does Not Include the Manufacturer's Manual*

Fudge argues that the State, in addition to showing compliance with the required testing procedures set out by KDHE, had to prove that the testing procedures followed the "manufacturer's operational manual." In support, Fudge cites *State v. Bishop*, 264 Kan. 717, 957 P.2d 369 (1998), which states that to create an evidentiary foundation for a breath test, the State must introduce evidence "that the testing procedures were used in accordance with the manufacturer's operational manual and the requirements set out by the KDHE." 264 Kan. at 725.

But the *Bishop* court never reached the protocol issue Fudge raises here. Defense counsel had not objected to the evidence about the breath test and its result on the grounds raised in the motion in limine—that the trooper who conducted Bishop's breath test failed to follow the proper test protocol. Thus, the Kansas Supreme Court found the issue was not preserved for appeal. 264 Kan. at 730-31.

More fundamentally, Fudge fails to recognize crucial changes in the law after *Bishop*. *Bishop* applied K.S.A. 1997 Supp. 8-1002(a)(3)(A)-(C), which it held required the State to show "that the testing procedures were used in accordance with the manufacturer's operational manual and the requirements set out by the KDHE." 264 Kan. at 725. See *State v. Lieurance*, 14 Kan. App. 2d 87, 91, 782 P.2d 1246 (1989) ("[T]o introduce the results of a breath test, the prosecution must lay a foundation showing that the testing machine was operated according to the manufacturer's operational manual and any regulations set forth by the Department of Health and Environment.") The relevant

10

statute requires the State to show, as to testing procedures, solely that "the testing procedures used were in accordance with the requirements set out by the Kansas department of health and environment." K.S.A. 2020 Supp. 8-1002(a)(3)(B).

KDHE's relevant administrative regulation in 1998, when *Bishop* was decided, required compliance with both the manufacturer's requirements and KDHE's protocol. K.A.R. 28-32-1(b)(3) (1997 Supp.) stated:  "Equipment shall be operated strictly according to description provided by the manufacturer and approved by the department of health and environment." But this language was revoked effective March 14, 2008, thus it has no application here. The comparable language in KDHE's current regulations is found in K.A.R. 28-32-9(b)(4), which says nothing about the manufacturer's manual. It requires only that "[e]ach certified operator shall follow the standard operating procedure provided by the secretary for the EBAT device in use." ("EBAT" means evidential breath alcohol test, K.A.R. 28-32-8(i); "secretary" means secretary of KDHE, K.A.R. 28-32-8[m]). See *State v. Knox*, No. 104,204, 2011 WL 1197305 (Kan. App. 2011) (unpublished opinion).

Compliance with the manufacturer's manual was thus not among the required testing procedures set out by KDHE in the statute, in the administrative regulations, or in the protocol for the Intoxilyzer 9000 in 2020 when Fudge was arrested for DUI. See generally K.A.R. 28-32-9 (agency certification); K.A.R. 28-32-10 (operator certification); K.A.R. 28-32-11 (2020 Supp.) (EBAT device certification). As a result, the State had no need to show that the testing procedures followed the manufacturer's operational manual to establish the admissibility of Fudge's breath test results under K.S.A. 2020 Supp. 8-1002(a)(3)(B).

But even if compliance with the manufacturer's manual were required in 2020, Fudge fails to show that the "manufacturer's operational manual" for the Intoxilyzer 9000 requires an operator to check the subject's mouth before administering the test. To the

11

contrary, Pfannenstiel testified that the Intoxilyzer 9000 Operation Manual does *not* recommend that anyone check the subject's mouth.

### *Prior Cases are Not on Point*

Fudge also relies on *Campas*, 2014 WL 4082408, at *7, alleging it has similar facts. *Campas* asked whether the testing procedures used were in accordance with the requirements set out by the KDHE. And the *Campas* panel affirmed the district court's suppression of breathalyzer test results because the subject had tobacco in his retainer during the test.

But the similarity ends there. Other facts distinguish *Campas* from our case in one important respect. There, as the court recognized, "[l]ittle evidence was presented as to what the KDHE protocols actually require." 2014 WL 4082408, at *5. Not so here.

The only evidence in *Campas* about KDHE's testing protocol was one statement from a law enforcement officer:

> "'Q. Okay. Now your protocol—protocol number one, the 20–minute immediate presence requirement requires that you make sure that the subject does not have any foreign matter in his mouth; is that correct? 'A. It is correct that he's not to have anything. That is correct.'" 2014 WL 4082408, at *5.

In *Campas*, the State did not admit KDHE's written protocol for testing procedures, or expert testimony about the protocol, or any other evidence on the subject. The panel thus concluded, based on the only evidence presented, that KDHE protocol number one required a subject's mouth to be free of foreign matter. 2014 WL 4082408, at *7.

Here, in contrast, the State admitted KDHE's published protocol for the Intoxilyzer 9000 which says nothing about checking the subject's mouth. The State also admitted an expert witness who testified that KDHE's testing requirements do not include checking a subject's mouth. And our record contains no evidence to the contrary. We thus find *Campas* distinguishable and unpersuasive. See Supreme Court Rule 7.04(g)(2)(B)(i) (2022 Kan. S. Ct. R. at 48).

Our Court has addressed similar evidentiary foundation issues in various contexts over the years. See e.g., *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 123, 200 P.3d 496 (2009); *City of Shawnee v. Gruss*, 2 Kan. App. 2d 131, 133, 576 P.2d 239 (1978), *overruled on other grounds by State v. Bristor*, 236 Kan. 313, 691 P.2d 1 (1984); *State v. Hosler*, No. 108,111, 2013 WL 2321191, at *4 (Kan. App. 2013) (unpublished opinion); *State v. Pfizenmaier*, No. 104,112, 2011 WL 1877831, at *l-2 (Kan. App. 2011) (unpublished opinion); *State v. Anderson*, No. 94,364, 2006 WL 903168, at *3 (Kan. App. 2006) (unpublished opinion). But each case is governed by its own facts and the relevant law. We find no case on all fours with this one.

### *The Purpose of the Deprivation Period is Not Undermined*

We acknowledge that the general purpose of the 20-minute deprivation period in the first step of the KDHE Intoxilyzer 9000 protocol is "for the testing officer to make sure there is no residual alcohol in the subject's mouth at the time of the breath test." *Mitchell*, 41 Kan. App. 2d at 119. As stated in *Molina v. Kansas Dept. of Revenue*, 57 Kan. App. 2d 554, 559, 456 P.3d 227 (2019):

> "The whole point of the alcohol deprivation period is to assure that the test subject has neither placed alcohol in his or her mouth during the deprivation period nor allowed some other substance in the test subject's body which could interfere with the accuracy of the test that is about to be administered." 57 Kan. App. 2d at 559.

13

Pfannenstiel's testimony confirms this purpose.

Still, no evidence shows that the tobacco pouch in Fudge's mouth may have inflated the alcohol content measured by the Intoxilyzer 9000. Pfannenstiel testified that chewing gum in the subject's mouth during the breathalyzer would not affect the test's accuracy. And her biggest concern with having chewing tobacco in the subject's mouth is that flecks of it could be blown into the equipment and block its mesh filter, not that it could increase the measured alcohol content. No evidence shows that Fudge's tobacco pouch in his mouth during the test may have increased the alcohol measured by the breath test.

But even if having a foreign matter in a subject's mouth may generally cast doubt on the accuracy of the breathalyzer test results, the court's role here is to determine only whether the State has met the minimal foundational requirements for admissibility. The fact-finder will determine the weight to give that evidence. See *Hosler*, 2013 WL 2321191, at *4.

CONCLUSION

Based on the evidence admitted at this hearing, we find that the operator of the Intoxilyzer 9000 is not required to check a subject's mouth as a requirement for admission of failed breathalyzer test results. The State met the minimal foundational requirements for admission of the breathalyzer test by showing that the operator and the equipment used were certified, and "the testing procedures used were in accordance with the requirements set out by the Kansas department of health and environment." K.S.A. 2020 Supp. 8-1002(a)(3). Thus, the district court erred by granting Fudge's motion to suppress. For these reasons, we reverse and remand with instructions to deny Fudge's motion to suppress.

Reversed and remanded with directions.

14