(268 P.3d 1206)
No. 104,839

STATE OF KANSAS, *Appellee,* v. CASSIDY LEE SMITH, *Appellant.*

Opinion filed December 16, 2011.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Amy E. Taylor*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., ARNOLD-BURGER and BRUNS, J.J.

BRUNS, J.: Cassidy Lee Smith appeals his misdemeanor conviction for driving under the influence of alcohol (DUI) and related charges. Smith argues that the district court erred in denying a motion to suppress the results of an Intoxilyzer 8000 breath test that he took after he was involved in an accident. Although he admits that he consented to taking the breath test, Smith contends the State failed to establish at the suppression hearing that the law enforcement officers who administered the test complied with Kansas Department of Health and Environment (KDHE) protocol. We find that this evidentiary issue is not an appropriate subject for a motion to suppress because it does not involve a denial of Smith's constitutional rights. Accordingly, we conclude that Smith is not entitled to the relief contemplated in K.S.A. 22-3216, which governs motions to suppress, and that the State did not have the burden to lay a foundation for the admission of the results of the breath test at the suppression hearing. Thus, we affirm Smith's convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 2009, Saline County Sheriff's Deputies Jerry Hammonds and Patrick Queen responded to an accident involving a pickup truck and a train. The deputies found Smith passed out in the driver's seat of his pickup truck with the engine running. After rousing Smith, the deputies observed that he smelled of alcohol and that he fell out of the pickup truck as he attempted to exit the vehicle. They also observed that his speech was slurred, his eyes were red, and he had trouble standing.

Smith refused to submit to field sobriety tests, telling Deputy Hammonds that he was drunk and could not pass the tests. Deputy Hammonds arrested Smith and took him to the Saline County Jail.

Because Deputy Hammonds was not yet certified to operate the Intoxilyzer 8000, he was assisted by Deputy Queen, who was certified to operate the machine.

Deputy Hammonds inspected Smith's mouth for foreign substances and then commenced a 20-minute deprivation period, during which Smith was not allowed to put anything into his mouth. According to Deputy Hammonds, he did not leave Smith's presence during the deprivation period, and he did not see Smith cough, vomit, or put anything into his mouth. Deputy Hammonds also read the DC-70 form to Smith, while Deputy Queen answered Smith's questions about the form.

Following the deprivation period, Deputy Queen performed a breath test on Smith using the Intoxilyzer 8000. It is undisputed that Smith voluntarily agreed to take the breath test and that the results of the test showed that Smith's blood-alcohol level was .222. Smith was ultimately charged with driving under the influence, transporting an open container, failing to wear a seatbelt, and failing to stop or obey a railroad crossing signal.

Smith pled guilty to the charges before a district magistrate judge. He then exercised his right to appeal to a district court judge under K.S.A. 22-3609a. Prior to trial, Smith filed a motion to suppress in which he argued that the Intoxilyzer 8000 test results should be suppressed because "the officers failed to comply with the Kansas Department of Health and Environment protocol prior to administering the breath test."

On March 23, 2010, the district court held a hearing on the motion to suppress. At the suppression hearing, the State presented testimony regarding the implied consent advisory, the 20-minute deprivation period, and Deputy Queen's certification to operate the Intoxilyzer 8000 machine. The State did not, however, present evidence regarding whether the KDHE protocol for operating the machine was followed.

Smith's attorney did not cross-examine Deputy Queen at the suppression hearing. Rather, he simply argued that the test results should be suppressed because the State failed to establish that the KDHE protocol had been followed during the administration of the Intoxilyzer 8000 test. After hearing the testimony and the ar-

guments of counsel, the district judge denied the motion to suppress.

The case was then presented to the district judge on a stipulation of facts. Based on the stipulation, the judge found Smith guilty on all of the charges and sentenced him to 12 months' probation with an underlying sentence of 6 months in the county jail. Thereafter, Smith filed a timely notice of appeal.

## ISSUES PRESENTED AND ANALYSIS

On appeal, Smith contends the district court erred in denying his motion to suppress the results of the breathalyzer test. Smith argues the State failed to meet its burden of proof to establish that the law enforcement officers complied with the KDHE protocol for administering the Intoxilyzer 8000 breath test. Thus, Smith asks that the breath test results be suppressed and that this case be remanded for a new trial.

*Motions to Suppress*

A motion to suppress is intended to exclude evidence obtained as a result of an illegal search and seizure. Typically, motions to suppress are filed to address alleged violations of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights that result from the actions of a law enforcement officer—either lack of reasonable suspicion or probable cause, or the absence of consent. See *e.g.*, *State v. Fewell*, 286 Kan. 370, 376-80, 184 P.3d 903 (2008).

In Kansas, motions to suppress evidence in criminal proceedings are controlled by K.S.A. 22-3216. This statute provides that "a defendant aggrieved by an unlawful search and seizure may move . . . to suppress as evidence anything so obtained." K.S.A. 22-3216(1). "The motion shall be in writing and state facts showing wherein the search and seizure were unlawful." K.S.A. 22-3216(2).

Here, Smith's motion to suppress does not allege an unlawful search or seizure and he admits that he "agreed to submit to a breath test." Accordingly, we find that the motion to suppress falls far short of the requirements of K.S.A. 22-3216. Furthermore, we

find that an alleged failure of a law enforcement officer to follow KDHE protocol does not constitute the violation of a constitutional right and is not legally sufficient to support a motion to suppress.

*Distinction between Motions to Suppress and Motions in Limine*

"Suppression is not the appropriate remedy for a nonconstitutional violation; rather, the appropriate remedy is the grant of a motion in limine." *State v. Desper*, 151 Ohio App. 3d 208, 219, 783 N.E.2d 939 (2002); see *United States v. Mays*, 424 Fed. Appx. 830, 833-34 (11th Cir. 2011); *United States v. Guttenberg*, 2007 WL 4115810, *5, n.1 (S.D.N.Y. 2007) (unpublished opinion); 75 Am. Jur. 2d, Trial § 40. Motions in limine have generally been used to invoke a trial judge's inherent power to control proceedings, to exclude inadmissible evidence, and to prevent undue prejudice. See *State v. Quick*, 226 Kan. 308, 310-13, 597 P.2d 1108 (1979). A ruling on a motion in limine is temporary in nature and is subject to revision at trial in light of the evidence that is actually presented. See *State v. Brown*, 6 Kan. App. 2d 556, Syl. ¶ 2, 630 P.2d 731 (1981).

In the present case, it is undisputed that the State would have had the burden to lay a proper foundation for admission of the Intoxilyzer 8000 test results at trial. See *State v. Bishop*, 264 Kan. 717, 72526, 957 P.2d 369 (1998). But it had no such burden at the hearing on the motion to suppress. See *State v. Burton*, No. 98,049, 2008 WL 441015, *3 (Kan. App. 2008) (unpublished opinion). Accordingly, even if Smith had successfully filed a motion in limine in an attempt to exclude the presentation of the test results at trial, the State would have still had an opportunity to attempt to lay a proper foundation for admissibility at trial.

Therefore, we conclude that the district court did not commit error in denying Smith's motion to suppress.

Affirmed.

ARNOLD-BURGER, J., concurring: Unfortunately, as the majority points out, there has been a significant blurring of the distinction between motions in limine and motions to suppress, particularly as applied to foundational requirements for admission of the Intoxi-

lyzer results. In fact, the cases are too numerous to list where we have ruled on foundation requirements for the Intoxilyzer raised through a motion to suppress. While I agree with the distinctions noted by the majority, it makes no practical difference in this case. Even if the breath test results had been excluded from consideration, it would not have made any difference in the outcome of Smith's trial.

The evidence was overwhelming that Smith was operating a motor vehicle while under the influence of alcohol to the degree that he could not safely operate a vehicle, which was one of the alternative charges in this case. When deputies arrived at the scene of a reported injury accident, they observed a white pickup truck that had been pushed down the tracks by a train. It appeared that the truck had driven around the railroad safety arms and into a stopped train. When the train began moving slowly, it dragged the truck with it. There was extensive front end damage to the truck. Smith was found passed out in the driver's seat of the truck, with the engine running. Deputies tried to wake him by knocking on the window, to no avail. They finally reached in and turned the truck off. Smith had an overwhelming smell of alcoholic beverage coming from him. A large amount of alcohol was located in the back of the truck. Smith appeared to the deputies to be very intoxicated. His speech was slurred. His eyes were red and watery. He had trouble standing up, was very confused, and unable to find his driver's license. One of the deputies had to catch him to prevent him from falling. When asked to perform field sobriety tests, Smith said he did not need to because he was too drunk to pass them. Although he initially denied drinking, he later admitted being at a bar and drinking two "big" beers. Had the deputies not given him a breath test, overwhelming evidence still existed to find Smith guilty of operating a motor vehicle under the influence of alcohol to the degree that rendered him incapable of safely operating a vehicle. So even if we assume, as Smith argues, that the breath test result was admitted in error, it would not have changed the ultimate outcome of the trial.