NOT DESIGNATED FOR PUBLICATION

No. 113,762

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT L. BRAUN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed December 15, 2017.
Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and POWELL, JJ.

PER CURIAM: Robert L. Braun was convicted of driving under the influence of alcohol (DUI) for having a blood alcohol content over .08, in violation of K.S.A. 2012 Supp. 8-1567(a)(2). But in light of two recent Kansas Supreme Court decisions, his motion to suppress the blood test result should have been granted. Accordingly, there was insufficient evidence to convict him of a violation of K.S.A. 2012 Supp. 8-1567(a)(2). But based on the stipulated facts presented, there was sufficient evidence from which the district court could find Braun guilty of the alternative charge of operating a vehicle while under the influence of alcohol to a degree that rendered him incapable of safely

1

driving a vehicle, in violation of K.S.A. 2012 Supp. 8-1567(a)(3). Accordingly, the error was harmless. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Braun was arrested in April 2013 for DUI. Braun was charged with one count of DUI for operating a vehicle while his blood alcohol content was at least .08 grams of alcohol per 100 milliliters or greater, in violation of K.S.A. 2012 Supp. 8-1567(a)(2). In the alternative, Braun was charged with DUI for operating a vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle, in violation of K.S.A. 2012 Supp. 8-1567(a)(3).

Braun filed a motion to suppress the breath test result alleging that Braun's constitutional rights were violated when officers obtained a blood sample from him without a warrant because Braun's consent was not voluntary nor was it free from coercion. The district court denied Braun's motion.

Subsequently, the parties agreed to a stipulation of facts and submitted it to the court for a bench trial. The stipulation read as follows:

> "1. On April 6, 2013 at 9:28pm, while on a traffic stop . . . in Ellis County, Kansas, Trooper Summers observed a white Ford pick-up pull up behind his patrol vehicle. The truck was driven by Robert Lee Braun, age 66.

> "2. Trooper Summers walked to the rear of the vehicle and motioned with his arms for Braun to proceed around his vehicle, just as the other traffic had been doing.

> "3. Braun remained approximately 30 feet behind Trooper Summers vehicle and Trooper Summers walked towards Braun's vehicle.

2

"4. Braun's window was down approximately 3 inches. Trooper Summers asked Braun to put down the window.

"5. Braun attempted to put down the window and was placing both of the back windows down and seemed to be having trouble with locating the driver's side window control.

"6. During his attempts to get the window down, Braun was mumbling something Trooper Summers could not understand. Braun raised his hands in confusion to operating the windows.

"7. Trooper Summers asked Braun to open his door to communicate with him. As Braun opened the door, Trooper Summers immediately detected [an] odor of an alcoholic beverage coming from the vehicle.

"8. Trooper Summers had Braun turn off his vehicle. Trooper Summers advised the driver he could smell the odor of an alcoholic beverage coming from the vehicle and asked the driver how much he had been drinking.

"9. Braun grabbed an open bottle of water and started drinking it and said 'nothing, just water'.

"10. Trooper Summers asked Braun to exit his vehicle and to walk to the front of the patrol vehicle so that field sobriety tests could be performed. As Braun exited his vehicle, Trooper Summers noticed the driver was grabbing his door and swaying back and forth.

"11. While Trooper Summers was explaining the test, Braun took several deep breaths and made several moans. Braun was also rubbing his head, raising his arms, crossing his arms, and even stumbled backwards.

"12. During the field sobriety test Braun asked Trooper Summers several times why Trooper Summers had pulled Braun over.

3

"13. Trooper Summers told Braun that he had never pulled him over and that Braun had stopped behind the patrol vehicle. Braun even asked 'if you didn't pull me over, then who did?'

"14. Trooper Summers again told Braun that he had stopped on his own behind the patrol vehicle. Braun also stated, 'I should not be driving, officer. I'm sorry.'

"15. Braun stated that he had also been drinking but he was trying to chase down the lady in the truck ahead of him to save her because she had really been drinking.

"16. Braun attempted to do field sobriety, however, he stated he had a bad hip and he wasn't able to do the test. When Trooper Summers advised Braun to turn around and to place his hands on his head, Braun stated in a concerned voice, 'Oh my God, are you gonna give me a DUI?'

"17. Trooper Summers placed handcuffs on Braun and placed him in the front seat of the patrol vehicle. While Braun was in the patrol vehicle[,] Trooper Summers could still smell a strong odor of alcoholic beverage coming from the breath of Braun. While Braun was in the patrol vehicle, Braun stated several times 'this ain't good, I can't believe this, this can't happen, I'm sorry.'

"18. Trooper Summers gave Braun a copy of the Implied Consent form at 9:53 hours and read it to Braun.

"19. Trooper Summers asked Braun to give a blood test and Braun stated 'yea, sure, whatever.' Braun was transported to Quest Diagnostics where Trooper Summers observed Lisa Chappell take . . . blood [] from the left arm of Braun. The blood was drawn from Braun at 10[:]50pm . . . . The blood was sent to the KBI for testing.

"20. KBI lab results indicated Braun had a blood alcohol level of 0.24 grams per 100 milliliters of blood, drawn 1 hour and 20 minutes after driving."

The district court found Braun guilty of driving under the influence of alcohol, in violation of K.S.A. 2012 Supp. 8-1567(a)(2). Braun timely appeals.

4

*The district court erred in denying Braun's motion to suppress.*

On appeal, Braun argues that the district court erred by not excluding the results of the blood test from evidence. Specifically, Braun argues that the Kansas implied consent laws are unconstitutional.

Determining the constitutionality of a statute is a question of law subject to unlimited review. *State v. Ryce*, 303 Kan. 899, 905-06, 368 P.3d 242 (2016). In this case that review is easy because in the time since Braun filed his appeal, the Kansas Supreme Court decided that K.S.A. 2014 Supp. 8-1025 is facially unconstitutional. 303 Kan. at 903. In *Ryce*, the court held:

> "Applying the Due Process Clause of the Fourteenth Amendment to the United States
> Constitution, we recognize Kansas has compelling interests in combatting drunk driving
> and prosecuting DUI offenders. Nevertheless, by criminally punishing a driver's
> withdrawal of consent, 8-1025 infringes on fundamental rights arising under the Fourth
> Amendment. K.S.A. 2014 Supp. 8-1025, therefore, must withstand strict scrutiny by
> being narrowly tailored to serve the State's interests. We hold that K.S.A. 2014 Supp. 8-
> 1025 does not meet this test and is facially unconstitutional." 303 Kan. at 902-03.

This holding was reaffirmed on rehearing in *State v. Ryce*, 306 Kan. 682, 700, 396 P.3d 711 (2017).

Moreover, in *State v. Nece*, 303 Kan. 888, 889, 367 P.3d 1260 (2016), the Kansas Supreme Court held that a driver's consent to testing was "unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if [the driver] had refused to submit to breath-alcohol testing. Thus, because [the] consent was premised on the inaccurate information in the advisory,

[the] consent was involuntary." The Kansas Supreme Court affirmed the district court's order suppressing Nece's test results. 303 Kan. at 897. This holding was reaffirmed on rehearing in *State v. Nece*, 306 Kan. 679, 681, 396 P.3d 709 (2017).

The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Because Braun's consent was obtained after reading an advisory that incorrectly informed him he could face criminal penalties for refusing to undergo further testing the results of the blood test must be suppressed. See *Nece*, 303 Kan. at 897.

*The error was harmless.*

The State argues that even if the district court erred in not suppressing the blood test results, the error was harmless because Braun was charged in the alternative with being under the influence of alcohol to a degree that rendered him incapable of safely operating a vehicle under K.S.A. 2012 Supp. 8-1567(a)(3). The State argues that there was sufficient evidence in the stipulated facts to find Braun guilty under this alternative count.

The State is correct that the erroneous admission of evidence is subject to review for harmless error under K.S.A. 2016 Supp. 60-261. See *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). If the error implicates a constitutional right, which it does here, the effect of that error must be assessed under the constitutional harmless error standard: whether the party benefiting from the error proves beyond a reasonable doubt that the error would not or did not affect the outcome of the trial in light of the entire record. *State v. Santos-Vega*, 299 Kan. 11, 23-24, 321 P.3d 1 (2014). Such is the case here.

There was sufficient evidence for the district court to find Braun guilty beyond a reasonable doubt under K.S.A. 2012 Supp. 8-1567(a)(3) based on the evidence presented in the stipulated facts. Evidence was presented that Braun stopped behind Summers' patrol vehicle for no apparent reason and did not move around it as directed by Summers. When Summers asked Braun to put down his window Braun was unable to comply. When Braun opened the door to his vehicle Summers immediately smelled alcohol coming from the vehicle. Braun was having trouble standing and walking. Braun appeared confused and was unable to remember how he came in contact with Summers. Braun told Summers, "I should not be driving, officer. I'm sorry." When Braun was placed in the patrol vehicle Summers smelled alcohol coming from Braun's breath. Under these facts, there is no reasonable doubt that the ultimate outcome of the case was not impacted by the error. See *State v. Smith*, 46 Kan. App. 2d 939, 943-44, 268 P.3d 1206 (2011) (Arnold-Burger, J., concurring) (stating that even if breath test results were suppressed, the remaining evidence was so overwhelming that the defendant could still have been convicted of DUI).

Accordingly, the district court's error in admitting the blood test results was ultimately harmless.

Affirmed.

7