NOT DESIGNATED FOR PUBLICATION

No. 126,414

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NICHOLAS J. GEORGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA S. LEWISON, judge. Submitted without oral argument. Opinion filed February 28, 2025. Affirmed.

*Michael A. Millett*, of Law Office of Michael A. Millett, P.A., of Overland Park, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., MALONE and CLINE, JJ.

PER CURIAM: Nicholas J. George appeals his conviction of driving under the influence of alcohol (DUI) following a bench trial on stipulated facts. George claims the district court erred in denying his two motions to suppress the evidence, one because the law enforcement officers lacked reasonable suspicion to support the initial stop, and the other because the arresting officer did not comply with Kansas Department of Health and Environment's (KDHE) protocols for administering an Intoxilyzer 9000 breath test. After thoroughly reviewing the record, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

On March 29, 2021, at around 11:13 p.m., Officers Brian Zachary and Zachary Throneburg of the Riley County Police Department were on routine bicycle patrol in the "Aggieville" area of Manhattan when they saw George in his parked car at a Shop Quick parking lot drinking what appeared to be alcohol based on the color and size of the bottle. At first the officers were only going to warn George not to drink and drive. But as the officers approached the vehicle, they heard George shift into gear as though he was about to leave the parking lot, so they ordered him to stop. The seizure immediately led to a DUI investigation and George's arrest for DUI. George later submitted to an Intoxilyzer 9000 breath test which yielded a blood alcohol content of .152. The State later charged George with one count of misdemeanor DUI.

*First motion to suppress the evidence*

On November 22, 2021, George moved to suppress the evidence on the ground that both Zachary and Throneburg lacked reasonable suspicion to support the initial stop. The district court held a suppression hearing on December 22, 2021. Zachary and Throneburg testified and their testimony focused on the grounds for the stop.

Zachary testified that while on bicycle patrol with Throneburg, he heard talking and laughing, which prompted him to look over and see George in the driver's seat of a parked vehicle drinking what appeared to be beer. Zachary approached the driver's side of the vehicle while Throneburg approached the rear. As they got closer, Zachary heard the vehicle shift into gear, so he shouted to George that he should not leave. Zachary never saw the vehicle move, but he heard it shift into gear while the vehicle was running. Zachary made contact and George put the vehicle back into park.

2

On cross-examination, Zachary explained that he suspected George was drinking beer because it was a yellowish liquid in a glass bottle. He initially did not intend to stop George, but wanted to make voluntary contact with him until he heard the vehicle shift into gear. That caused Zachary to want to investigate whether George was operating a vehicle with an open container of alcohol. Zachary was wearing a body camera, and the footage of the stop was admitted into evidence.

Throneburg testified that he heard loud voices that caught his attention. He looked over to see George and a passenger sitting in a parked vehicle drinking what appeared to be alcohol. The overall shape of the containers, the time of night, and the loud and rowdy demeanor of the two men led Throneburg to believe they were drinking alcohol. As Zachary approached the vehicle, Throneburg heard it shift into gear. Throneburg was calling the contact in as a public contact, but readvised that it was now an open container contact after the gear shift, which he equated to the vehicle being in motion. Throneburg positioned his bicycle behind the vehicle with the emergency lights activated. The footage from Throneburg's body camera was admitted into evidence.

At the close of evidence George argued through counsel that the officers lacked reasonable suspicion to stop him in part because the State could not irrefutably prove that the officers saw him drink alcohol. The district court found Zachary's and Throneburg's testimony to be credible. The district court noted that from the body camera footage in evidence, the officers would have had a clear line of sight into the vehicle when they claimed to have noticed George drinking. The district court believed Throneburg's testimony about the shape of the bottle George drank from because "[b]eer bottles have a very distinctive shape" and "a somewhat distinctive color." The district court found that the stop occurred after George put the vehicle in gear as if to drive away. The district court concluded that the officers seeing what they believed to be alcohol consumption combined with the concern that George was about to drive supported reasonable suspicion for the stop. Thus, the district court denied George's motion to suppress.

*Second motion to suppress the evidence*

George filed a second motion to suppress on May 31, 2022. In that motion, he argued that the results of his breath test should be suppressed because the test required a 20-minute deprivation period where the subject may not consume any substance including water. But according to George, he drank water while going to the restroom before the test was administered and thus skewed the results.

The district court held a bifurcated suppression hearing starting on August 30, 2022. Zachary, who administered the breath test, testified. Zachary's body camera recorded the administration of the breath test, and the recording was admitted into evidence. The State walked Zachary through the footage, and he explained that George was monitored for 20 minutes before the test as the KDHE requires. But Zachary had forgotten to turn his radio off, which created a radio frequency error when he tried to administer the test, so he had to retest George.

George used the restroom before another test was administered. Zachary testified he covered his camera with his hand for privacy, but he watched George the entire time. He did not see George drink water or do anything else that would have compromised the test. Zachary also testified that according to his training he was not required to restart a 20-minute deprivation period after the first test resulted in an error. Zachary administered the second breath test 14 minutes after the first test failure. On cross-examination Zachary explained that during the deprivation period he placed George in a chair that allowed him to see George either directly or in his peripheral vision as he worked in the same room. He reiterated on redirect that George was in his vision the entire deprivation period and between tests and that George never put anything in his mouth.

The hearing was continued until September 9, 2022. George testified on his own behalf. George asserted that while he was in the restroom and while Zachary covered the

camera, he drank water, and that was captured on the camera's audio. He claimed Zachary was not in the restroom with him and the restroom door was blocking Zachary's view. He did not think Zachary was paying attention to him between tests.

At the close of evidence, and after hearing argument from counsel, the district court found that Zachary had credibly testified that George was in his view at all relevant times and that George had nothing to drink. The district court considered that the body camera footage admitted into evidence supported Zachary's testimony that the door was open, and Zachary could see into the small restroom from where he stood. The district court found that George was within Zachary's view or peripheral vision "the entire time." It also found uncontroverted that Zachary did not need to restart a new 20-minute deprivation period after the first test resulted in an error. The district court deemed George's testimony less credible than Zachary's testimony. The district court found that it could not hear George drinking water while the camera was covered. Based on these findings, the district court denied George's motion to suppress.

On December 13, 2022, the case proceeded to a bench trial on stipulated facts. In addition to the evidence already discussed, the parties stipulated that when Zachary contacted George in the parking lot, he noticed the odor of consumed alcohol coming from George. George's eyes were also watery and slightly bloodshot. George performed field sobriety tests and exhibited five clues on the walk and turn test. Zachary searched George's truck and found a cardboard container for Stella Artois beer with four bottles that were still cold. In addition to the stipulated facts, several exhibits were admitted into evidence including Zachary's and Throneburg's body camera footage.

After reviewing the evidence and stipulated facts, the district court found George guilty of DUI. The district court sentenced George to a 48-hour jail term and 12 months' probation including house arrest. George timely appealed the district court's judgment.

5

George claims the district court erred in denying his first motion to suppress because Throneburg and Zachary each lacked reasonable suspicion to support the initial stop. He splits his claim into two issues, first arguing that Throneburg lacked reasonable suspicion for the stop and next arguing that Zachary lacked reasonable suspicion, but we will address the issues together. The State argues that substantial competent evidence supports the district court's determination that both officers conducted an investigative detention based on reasonable suspicion that a crime was about to be committed.

"On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo." *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021) In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Sesmas*, 311 Kan. 267, 275, 459 P.3d 1265 (2020).

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15. These rights are fundamental and must be safeguarded by the courts. The Kansas Supreme Court has long held that the search and seizure provisions of the Kansas and United States Constitutions are similar and provide the same rights and protections. See, e.g., *State v. Neighbors*, 299 Kan. 234, Syl. ¶ 1, 328 P.3d 1081 (2014).

There are four types of police-citizen encounters. The first type is a voluntary encounter, which is not considered a seizure under the Fourth Amendment. *State v. Hill*,

6

281 Kan. 136, 141, 130 P.3d 1 (2006). The second type is an investigatory detention or *Terry* stop, in which an officer may detain any person in a public place if the officer reasonably suspects that the person is committing, has committed, or is about to commit a crime. K.S.A. 22-2402(1); see *Terry v. Ohio*, 392 U.S. 1, 20-23, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The third type of encounter is a public safety stop in which an officer may approach a person to check on their welfare when the office can articulate specific facts indicating concern for the public's safety. *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992). The fourth type of police-citizen encounter is an arrest. K.S.A. 22-2401.

A traffic stop is a seizure triggering Fourth Amendment protections. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). For such a seizure to be constitutionally reasonable, a law enforcement officer must have "specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." 300 Kan. at 637; see K.S.A. 22-2402(1).

Reasonable suspicion does not conform to a concise definition or a precise quantification. It is a lower standard than probable cause, and "'[w]hat is reasonable depends on the totality of the circumstances in the view of a trained law enforcement officer.'" *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). The reasonable suspicion analysis requires the use of an objective standard, not a subjective standard based on the officer's personal belief. *Cash*, 313 Kan. at 130. "In determining whether reasonable suspicion exists, the court must judge the officer's conduct in light of common sense and ordinary human experience under the totality of the circumstances." *Sharp*, 305 Kan. at 1081. We make our determination with deference to a trained officer's ability to distinguish between innocent and suspicious circumstances. 305 Kan. at 1081. To show reasonable suspicion for an investigatory stop, the State need not rule out the possibility that the suspect is engaged in innocent conduct. See *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

7

Although the officers at first intended to initiate a voluntary encounter with George and warn him not to drink and drive, there is no question the encounter became a seizure when Zachary shouted to George not to leave the parking lot, and George complied. See *State v. Phillips*, 49 Kan. App. 2d 775, 783, 315 P.3d 887 (2013) ("[A] person is seized when there is a show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave and the person submits to the show of authority."). Thus, the question is whether Zachary and Throneburg had reasonable suspicion that George was committing or about to commit a crime when they detained him.

Zachary testified that when he heard George shift his running car into gear, he shouted at him not to leave the parking lot because he wanted to investigate an open container violation. Throneburg also confirmed that he heard George shift into gear, and the encounter became an open container investigation. K.S.A. 8-1599(b) provides in part that "[n]o person shall transport in any vehicle upon a highway or street any alcoholic beverage unless such beverage is: [1] [i]n the original unopened package or container."

George argues that Zachary and Throneburg lacked reasonable suspicion to support the seizure because the officers merely thought George was drinking alcohol when he could have been drinking a nonalcoholic beverage. He points out that "[t]here are well over a hundred different types of non-alcoholic beer." George also argues that he could not be stopped for an open container violation because his vehicle was in a private parking lot and not on a public street when the officers detained him.

George's argument stems from an incorrect understanding of what information is needed to justify reasonable suspicion for a *Terry* stop. George's vehicle was parked in the "Aggieville" area of Manhattan at 11:13 p.m. Zachary testified that he heard a loud conversation that prompted him to look over at George consuming what appeared to be beer based on the liquid's color and type of bottle. Zachary testified that after he heard the

8

car shift into gear, he was concerned that George was operating or about to operate his vehicle with an open container of alcohol. Zachary's testimony was corroborated at least in part by the body camera footage admitted into evidence at the suppression hearing.

Throneburg testified he believed George was drinking alcohol based on the shape of the bottle, the time of night, and the rowdiness of George's conversation. He testified that he heard George shift his vehicle into gear, which reasonably implies he was about to drive away. This testimony was partially corroborated by the body camera footage. George points out that the body camera footage does not show that his truck ever moved. But the district court found the officers' testimony credible that they heard George shift his vehicle into gear, indicating he was about to pull away. An appellate court does not reweigh the evidence or assess the credibility of witnesses. *Sesmas*, 311 Kan. at 275.

While George argues that he could have been drinking a nonalcoholic beverage, that possibility alone does not diminish the reasonable suspicion standard. To show reasonable suspicion for a stop, the State need not rule out the possibility that the suspect is engaged in innocent conduct. See *Wardlow*, 528 U.S. at 125. George also argues that K.S.A. 8-1599, the statute regulating open alcohol containers in moving vehicles, only prohibits such conduct on public roads. He argues that he could legally drive his truck in a parking lot with an open container of alcohol. But the undisputed evidence of George shifting his vehicle into gear created a reasonable and common-sense inference that he intended to drive out of the parking lot and onto a public street. The reasonable suspicion standard applies to an officer's reasonable belief that a suspect is committing or is *about to commit a crime*. *Jones*, 300 Kan. at 637; see K.S.A. 22-2402(1).

Substantial competent evidence supports the district court's finding that Zachary and Throneburg reasonably suspected that George was committing or about to commit an open container violation. The officers had reasonable suspicion to support the initial stop, so the district court did not err in denying George's first motion to suppress the evidence.

Next, George claims the district court erred in denying his motion to suppress the breath test results. George argues that the breath test results should have been suppressed because the KDHE protocols require a 20-minute deprivation period before the test where the subject may not consume any substance including water, and according to George, he drank water a few minutes before the test which skewed the results. The State argues that substantial competent evidence supports the district court's determination that George did not drink water during the required 20-minute deprivation period.

As we said before, on a motion to suppress, an appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo. *Cash*, 313 Kan. at 125-26. In *State v. Smith*, 46 Kan. App. 2d 939, 942-43, 268 P.3d 1206 (2011), this court declined to review the defendant's claim that the district court erred in failing to suppress breath test results because the officer failed to comply with KDHE protocol, finding that a motion in limine, rather than a motion to suppress, was the appropriate vehicle for relief in district court. But other panels of this court have been reluctant to follow the holding in *Smith* in cases where the parties do not raise the issue and where the outcome would be the same had the defendant filed a motion in limine. See, e.g., *State v. Fudge*, 62 Kan. App. 2d 587, 590-91, 518 P.3d 1268 (2022). That is the case here—the parties have not raised the issue and the outcome would be the same had George filed a motion in limine instead of a motion to suppress—so we will proceed to address George's claim.

George argues that the district court should have granted his motion to suppress because the evidence showed he drank water before the test and compromised the results. He also argues that Zachary erred by not starting a new 20-minute deprivation period after the radio frequency error. Zachary administered the second breath test 14 minutes after the first test failure. KDHE requires a 20-minute deprivation period before the

10

administration of an Intoxilyzer 9000 test. *Fudge*, 62 Kan. App. 2d at 592. "The purpose of the 20-minute alcohol deprivation period is for the testing officer to make sure there is no residual alcohol in the subject's mouth at the time of the breath test." *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 119, 200 P.3d 496 (2009).

George cites *Mitchell* to support his claim. Mitchell was arrested for DUI and was transported to the sheriff's department for a breath test. Detective Demerritt began a 20-minute deprivation period. Just a few minutes after beginning, Mitchell requested a cup of water from a different officer. That officer acquiesced and Mitchell drank the water. DeMerritt could not refute that the other officer gave Mitchell water. Mitchell also used the restroom during the deprivation period where he was allowed to close the door and was alone for several minutes. This court found that KDHE protocol was not substantially complied with because Mitchell was out of DeMerritt's presence for several minutes and because he drank water. 41 Kan. App. 2d at 123. As a result, this court reversed the suspension of Mitchell's driving privileges. 41 Kan. App. 2d at 123.

George asserts that his case is nearly identical to *Mitchell*, though he does little to explain why. The differences in the two cases are glaring. Mitchell was handed a cup of water by another officer, evidence that DeMerritt could not refute. Zachary testified that he watched George the entire time and asserted that he never drank water. Zachary testified that George was never out of his vision, at least peripherally, during the deprivation period. Zachary's testimony and body camera footage show that when George went to the restroom, the door remained open, and Zachary stood in a position where he would have been able to see George move about the small room. So unlike in *Mitchell* where Mitchell was allowed in the restroom alone with the door closed, there is substantial testimonial and video evidence here that George was never left alone.

George testified differently, but the district court found that Zachary's testimony was more credible than George's. An appellate court does not reweigh the evidence or

11

assess the credibility of witnesses. *Sesmas*, 311 Kan. at 275. Substantial competent evidence supports the district court's findings that George was adequately monitored within Zachary's presence, and George did not place anything in his mouth that would compromise the breath test. This evidence supports the district court's legal conclusion that Zachary followed KDHE protocol on the 20-minute deprivation period.

As to George's claim that Zachary should have started a new 20-minute deprivation period after the radio frequency error, he does not support that claim with legal citation. Logically, the argument is a nonstarter. Without a finding that the 20-minute deprivation period was compromised, there would be no reason to restart the clock. George received a 34-minute deprivation period when the time was combined, which satisfied KDHE protocol for a minimum 20-minute period. Thus, the district court did not err in denying George's motion to suppress the breath test results.

Affirmed.