NOT DESIGNATED FOR PUBLICATION

No. 127,838

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DARLENE PAXSON,
*Appellee*,

v.

ESTATE OF HUNTER LANE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Oral argument held January 6, 2026. Opinion filed February 6, 2026. Affirmed.

*Charles H. Cooper*, *John L. Mullen*, and *William Dauster*, of Franke, Schultz & Mullen, P.C., of Kansas City, Missouri, for appellant.

*Dakota F.W. Persinger*, *Christopher J. Omlid*, and *Richard W. James*, of DeVaughn James Injury Lawyers, of Wichita, for appellee.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

PER CURIAM: Darlene Paxson sued the Estate of Hunter Lane for damages she received as the result of a motor vehicle accident, claiming Lane's negligence caused the collision. After a trial, the jury awarded Paxson damages, finding Lane was 95% at fault for the accident. The Estate appeals, contending the district court improperly admitted evidence that Lane had tetrahydrocannabinol (THC) in his system after his death. The Estate argues that, without corresponding evidence of impairment, the evidence was unduly prejudicial.

1

But the Estate ignored, in briefing, a vital fact—that it failed to preserve its objection to the admission of the evidence by not offering a contemporaneous objection to its admission at trial, despite its objection during pretrial proceedings. Finding the Estate's claim unpreserved, we decline to address the merits of its appeal and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Given the narrow focus of our decision, we recite only the most necessary facts. On March 28, 2022, a motorcycle, operated by Lane, collided with a Saturn Vue, driven by Paxson, at a busy intersection in Wichita. Testimony established that Paxson was driving west on Central on her usual route from work to home, within the posted speed limit, and slowed down as she approached the intersection before making a left-hand turn onto Greenwich. Meanwhile, Lane approached the intersection from the west, traveling east on Central. Witnesses to the accident testified that, just before the collision, Lane was weaving between cars, sometimes straddling lanes to go between cars, and traveling well above the posted speed limit, then increased his speed as he entered the intersection. Lane's motorcycle struck Paxson's car.

The impact killed Lane. At the scene, Paxson appeared to have suffered only minor injuries, with head and neck pain. After the accident, however, she suffered additional physical symptoms and developed psychological and memory issues. These physical and psychological symptoms prevented her from continuing her work and significantly affected her life.

An autopsy was conducted of Lane. The toxicology report indicated the presence of THC in Lane's system in the amount of 74 nanograms per milliliter (ng/mL). The police detective tasked with investigating the fatal motor vehicle accident testified in his deposition about the existence of THC in Lane's toxicology report and opined that the

2

existence of THC rather than a cannabinoid in Lane's system indicated recent ingestion of the substance.

Paxson sued the Estate for Lane's negligence causing or contributing to the collision and the Estate filed a wrongful death counterclaim against Paxson. Sarah Boston, the mother of Lane's daughter and sole heir, was granted intervention to file a third-party petition against Paxson. Ultimately, the Estate withdrew its survival action and Boston negotiated a settlement, accepting the policy limits on Paxson's motor vehicle insurance. Paxson's claims against the Estate remained unaffected by these developments.

Proceeding with Paxson's suit against the Estate, the parties filed cross-motions in limine to exclude various pieces of evidence. Relevant to this appeal, the Estate objected to any evidence of the toxicology report that indicated Lane had THC in his system at the time of the collision. The Estate supported its argument with a trial brief arguing that evidence of Lane's use of marijuana or THC was unduly prejudicial. At a subsequent hearing days before trial, the court heard arguments from the parties regarding the THC evidence. The district court ultimately concluded at the limine hearing that the evidence from the toxicology report that Lane had THC in his system was admissible, but that the detective's deposition testimony opining on the timing of his consumption of THC was inadmissible.

The case was presented to a jury over five days in March 2024. The jury ultimately found that Paxson had incurred $67,397.06 in medical expenses, $10,000 in future medical expenses, $65,152 in economic loss, $400,000 in noneconomic loss, and $100,000 in future noneconomic loss because of the accident. The total damage award assessed to Paxson was $642,549.06. The jury apportioned 95% of the fault for the collision to Lane's negligence and 5% fault to Paxson's. The district court subsequently entered the jury verdicts into a journal entry of judgment.

3

The Estate timely appeals.

ANALYSIS

The Estate's sole challenge to the trial court's judgment rests on the admission of the THC evidence. The Estate contends that the admission constituted an abuse of judicial discretion because the potential for unfair prejudice substantially outweighed the probative value of the evidence because the evidence lacked any probative value in this case.

As noted above, the Estate filed a motion in limine seeking to exclude any mention of Lane's use of THC. The requested exclusion covered two pieces of evidence: (1) the autopsy report, which included the toxicology report; and (2) Wichita Police Detective Robert Kempf's deposition testimony about the reports. In ruling on the admissibility of the THC evidence, the district judge found the THC evidence relevant to the question of fault, reasoning that common experience of jurors establishes that the presence of certain substances in the human body reduces reaction times and driving attentiveness.

> "And, it is the Court's impression that the presence of tetrahydrocannabinol is relevant to the issue of inattentive operation of a motorcycle. Which is one of the claims of the plaintiff in this case. It is weighing whether it's probative or prejudicial.
>
> . . . .
>
> "Tetrahydrocannabinol is such a substance just like ethanol and all the other things that are listed here. To just exclude the mention of one I think would not be proper because it would give the impression that there is nothing to be concerned about there— for the jury to be concerned about. Does the jury know that these substances can affect driving? I think that's going to be common knowledge. I don't think it takes an expert to indicate that the—there is a potential harm to a driver with any of these substances or a potential diminishment of their ability to think, reason, or control their actions. How that affects their control—there isn't any testimony here from anybody that I have been

4

informed about that would indicate what the effect of that would be. But I believe it is relevant just as saying there was no—none of the other substances is relevant."

The district judge, however, ruled that Detective Kempf was not qualified to provide an opinion about the recency of Lane's ingestion of the drug. Kempf was an accident reconstructionist and not a qualified toxicology expert.

"However, with regard to the officer, I don't believe he is qualified because he is not—I don't believe he is qualified to give the testimony that would—which would indicate that tetrahydrocannabinol in the system indicates recent ingestion as opposed to cannabinoid in the system. Though he has training and experience as an officer, he is not testifying about that from a personal knowledge investigation of the chemical analysis. It's what someone else has told him that has that qualification. We don't have anybody that I have been informed of that will be testifying about that.

"I think the statement in the autopsy report is not extracted or stricken out, it's left in. So there is no deletion from the autopsy report. And the question that Mr. Persinger gave, Detective in your review of the automobile [*sic*] report did you notice any toxicology measurements? The answer is yes, that stays in. And it continues, what were the findings of the toxicology report? His answer, ethanol, not detected. Acetone not detected. And tetrahydrocannabinol also known as THC indicated 74 nanograms, that's in. But the further statements by the officer through line 24 on page 31 are removed."

Paxson then published the autopsy and toxicology reports and Detective Kempf's redacted deposition testimony to the jury. During the admission of both forms of evidence at trial, the Estate made no objections.

*Preservation*

K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Showalter*, 318 Kan. 338, 345, 543 P.3d 508 (2024). The Kansas Supreme Court instructs

that failure to adhere to the contemporaneous objection requirement of K.S.A. 60-404 is a procedural bar to appellate review. *State v. Crudo*, 318 Kan. 32, 38, 541 P.3d 67 (2024). Because neither party's written briefs addressed preservation of this issue, we issued a notice to the parties to be prepared to discuss preservation at oral argument. "'Preservation is a question of law subject to plenary review.'" *State v. Scheetz*, 318 Kan. 48, 58, 541 P.3d 79 (2024).

Clearly, the evidentiary issue was presented to the district court in advance of trial. The Estate specifically objected to the admission of the THC evidence in its pretrial motion in limine and its brief in support of that motion. Counsel for the Estate then elaborated on its arguments during the hearing on the motions in limine. While the Estate first argued prejudicial surprise due to the late disclosure of the THC evidence, the Estate also claimed that the admission of the evidence was unduly prejudicial "since there has been no expert report from anyone stating that Hunter Lane was an impaired driver at the time of the accident from marijuana use." The Estate sought to redact the mention of THC from the autopsy report and to exclude Detective Kempf's testimony regarding both the existence of THC and the recency of Lane's THC ingestion.

But, while the issue was raised in pretrial motions, the record does not identify a contemporaneous objection to the admission of the THC evidence at trial. First, as we examine the written reports, the record designates the autopsy and toxicology reports collectively as Plaintiff's Exhibit 12. According to the trial transcript, Paxson moved to admit a series of exhibits on the second day of trial before the jury was brought into the courtroom. Among the exhibits offered for admission was Exhibit 12. When asked by the court whether it had any objections to that group of exhibits, and specifically told that if counsel "need[ed] to lodge objections for the record, that's a thing that [they] would do now," the Estate indicated it had no objections to the admission of any exhibit except for Exhibit 19, which it had previously discussed with the court, and multiple parts of Exhibit 28, which it had received less than 30 days before trial. Accordingly, the record reveals

6

no contemporaneous or standing objection to the admission of Plaintiff's Exhibit 12 containing the written reports at trial.

Second, when Detective Kempf's deposition testimony was offered during trial, defense counsel again did not object or refer to its pretrial arguments. Before the jury was brought into the courtroom to view the video, the district court asked counsel if there was "anything we need to address before we begin with the next witness which [the court understood] will be testimony by video." Paxson's counsel discussed how he planned to display exhibits during the video presentation, and the Estate's counsel lodged no objection during this discussion. The jury was called into the courtroom, and Paxson's counsel then played Detective Kempf's video deposition without objection by the Estate.

When a party obtains an adverse pretrial ruling regarding the admission of evidence, the party must lodge an objection to the admission of the evidence at trial to preserve the issue for appeal. *Showalter*, 318 Kan. at 345 ("[A]ny pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing objection."). This rule is designed to allow a district court to change a ruling based on additional information as the case unfolds. See *State v. Kelly*, 295 Kan. 587, 590, 285 P.3d 1026 (2012); *State v. Smith*, 46 Kan. App. 2d 939, 943, 268 P.3d 1206 (2011).

An exception to the contemporaneous objection requirement is a standing or continuing objection. *Showalter*, 318 Kan. at 345. A review of the trial transcripts reveals no standing objection at trial to the admission of the THC evidence. When discussing Detective Kempf's deposition during the pretrial limine hearing, defense counsel noted that the parties agreed to a continuing objection *during the deposition* as to Detective Kempf's qualifications to opine on the toxicology report. But the district court was not asked for a continuing objection to Detective Kempf's testimony either after the court made its pretrial ruling.

7

The parties' lack of briefing on the question of preservation left this court "'hunting for truffles'" within the record. See *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010). Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires an appellant to include in an appellate brief "[t]he arguments and authorities relied on, separated by issue if there is more than one. Each issue must begin with citation to the appropriate standard of appellate review *and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on.*" (Emphasis added.) Even so, we offered the parties the opportunity to argue the issue and, given the oral arguments, consider their positions on preservation.

The Estate argued, on the one hand, that it offered a standing objection during the pretrial hearing. After a thorough review of the hearing transcript, we disagree with the Estate's characterization of what transpired during that hearing. The following exchange occurred during the limine hearing when the district court was apparently reading through Detective Kempf's deposition testimony—not about the THC issue but about the caution required by a driver when a traffic light turns yellow:

> "[THE JUDGE:]  [Paxson's counsel] objects to form. Just to make life easier, [Estate counsel], if you would acknowledge a standing objection in questions which would be directed towards an expert witness, plaintiff would like to have an objection on that. Detective Kempf was not disclosed as an expert in the case, but you are seeking expert testimony from him. So as long as you will acknowledge a standing objection, I will stop lodging this objection to make this progress—process go by smoother.
>
> "[Estate counsel], fine, you don't have to object anymore. All objections are reserved for the purpose of getting through this.
>
> . . . .
>
> "[Paxson's counsel], asking for a continuing objection, will you grant it?
> "[Estate counsel], yes.
> "[Paxson's counsel], okay. Okay.

8

"[Estate counsel], okay. So in any event we know that Ms. Paxson—as she was—is approaching the intersection, she has the yellow light for several seconds given the speed limit. In fact, she is not in view; correct?"

Not only does the standing-objection discussion relate to a different topic, it appears the court was reading the objections offered during the deposition. And, at more than one point during the limine hearing, the district court reminded counsel that if they "see something [they] think is inappropriate, raise an objection" at trial. The district judge said that "if there is something that comes in you have got to make an objection if you think it needs to be noted. I'm not going to jump in and say well, that violates an agreement on the motion in limine."

The Estate also urges us to follow the lead of other cases in which our appellate courts refused to strictly apply the contemporaneous objection rule, citing *Great American Insurance Co. v. Wahl*, No. 117,176, 2017 WL 5014883 (Kan. App. 2017) (unpublished opinion). In *Great American*, a panel of our court noted that "Kansas appellate courts have, on occasion, refused to strictly apply the contemporaneous-objection rule in some contexts upon finding the underlying purpose for the rule has been satisfied." 2017 WL 5014883, at *4 (citing *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 [2013]; *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 [2012]; *State v. Breedlove*, 295 Kan. 481, 490-91, 286 P.3d 1123 [2012]). We decline this invitation for a few reasons.

First, *Great American* does not assist the Estate, as there our court found that Great American did not contemporaneously object to the admission of the challenged evidence at trial, so it "failed to preserve this issue for appeal." 2017 WL 5014883, at *5.

Next, we choose to adhere to the Kansas Supreme Court's more recent affirmations of its position on the issue of preservation through contemporaneous

objection. In *Scheetz*, although the focus was on a party raising a general objection at trial and a more specific objection on appeal, the Kansas Supreme Court unambiguously stated that "[p]reserving an evidentiary challenge under K.S.A. 60-404 requires a timely and specific objection. It is not optional." *Scheetz*, 318 Kan. at 59. In *Showalter*, the court discussed the purpose behind the rule—that "a timely and specific objection allows the district court to consider as fully as possible—*in context*—whether the evidence should be admitted, which reduces the chances of using tainted evidence and thus avoids possible reversal and a new trial." (Emphasis added.) 318 Kan. at 345-46. The *Showalter* court also acknowledged that Kansas appellate courts have occasionally declined to strictly apply the rule "in certain contexts, but only after finding the underlying purpose for the rule has been satisfied." 318 Kan. at 346.

We find the emphasis on context, ultimately, the most important consideration in this case. In *Showalter*, the parties presented extensive argument on the admissibility of the evidence challenged on appeal during the pretrial motions hearing. Then, at trial, Showalter globally objected to many exhibits by renewing his pretrial objections to a range of numbered exhibits which included the exhibit challenged on appeal. Because he objected at trial, our Supreme Court found his appellate argument preserved. 318 Kan. at 349.

Here, we lack the context provided in *Showalter*. Although we can review the substantive arguments offered by the parties at the pretrial motions hearing, we have no objection or argument provided to the district court in the context of the trial. This presents a difficult, and frankly unanswerable, question to the appellate court. Without a contemporaneous or standing objection at trial, we are left to speculate about whether trial counsel strategically permitted the evidence to be admitted at trial, despite its pretrial objection, or whether the lack of trial objection was unintentional. Especially in this case, we are left with confusion regarding the Estate's intention. In its opening argument at trial, the Estate itself mentions the THC found during Lane's autopsy by arguing that

10

Paxson was "going to prove [Lane] had THC in his system, yes, but that no one's going to testify he was impaired." We reject Paxson's suggestion at our appellate oral argument that this statement by the Estate at trial—which could simply be an attempt to draw away the sting of the THC evidence—somehow waived the Estate's evidentiary challenge. Even so, the statement gives further support to the question about trial strategy when combined with the lack of objection at trial.

Counsel clearly utilized a continuing objection during Detective Kempf's deposition, and both sides objected repeatedly during trial for various reasons. Both forms of evidence challenged on appeal were admitted at trial outside the presence of the jury, which offered opportunities to address the Estate's challenges without focusing the jury's attention on the evidence. Given counsel's use of objections throughout the trial, we cannot determine—without a continuing objection—whether the failure to object at trial was a trial tactic that, when it did not succeed, is now being second-guessed by counsel on appeal. As recently examined by another panel of our court, "[a]ppellate courts tread into dangerous territory when they step outside the rules governing the adversarial process and the roles of various courts within that process." *State v. Harris*, No. 127,387, 2025 WL 3250781, at *1 (Kan. App. 2025) (unpublished opinion). Because we are tasked with determining, on appeal, whether the district court made a mistake at trial, we must "avoid reimagining [the district court's] decision based on facts or arguments not presented as factors for the district court to consider." 2025 WL 3250781, at *1.

Finding the Estate failed to preserve its challenge to the THC evidence, we must affirm the district court's judgment.

Affirmed.